AXINN, VELTROP & HARKRIDER LLP
DANIEL S. BITTON (SBN 320296)
dbitton@axinn.com
JACKLIN CHOU LEM (SBN 255293)
jlem@axinn.com
DARPAN R. SINGH (SBN 347052)
dsingh@axinn.com
ISABELLA L. SOLÓRZANO (SBN 345703)
isolorzano@axinn.com
55 Second Street
San Francisco, CA 94105
Telephone: (415) 490-2000

AXINN, VELTROP & HARKRIDER LLP
CRAIG M. REISER (*pro hac vice pending*)
creiser@axinn.com
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2200

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., and*
*TikTok USDS Joint Venture LLC*

**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GFC & SUPPLY INC., dba BIGPAPA BREAKS,<br><br>Plaintiff,<br><br>vs.<br><br>TIKTOK INC., *et al.*,<br><br>Defendants. | Case No. 2:25-cv-10054-JLS-AGR<br><br>**DEFENDANTS TIKTOK INC., BYTEDANCE INC., AND TIKTOK USDS JOINT VENTURE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 22, 2026<br>Time: 10:30 A.M.<br>Place: Courtroom 8A, 8th Floor<br>Judge: Hon. Josephine L. Staton |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on May 22, 2026 at 10:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Judge Josephine L. Staton, located in the First Street U.S. Courthouse, 350 West 1st Street, Courtroom 8A, 8th Floor, Los Angeles, California 90012, Defendants TikTok Inc., ByteDance Inc., and TikTok USDS Joint Venture LLC (collectively, "TikTok") move the Court for an order dismissing the Amended Complaint (ECF No. 20) filed by Plaintiff GFC & Supply Inc., d/b/a BigPapa Breaks ("Plaintiff") in this action in its entirety because:

1.      Section 230 of the Communications Decency Act immunizes TikTok from each of Plaintiff's claims based on TikTok's exercise of its traditional editorial function and for taking action to protect its users from objectionable content.

2.      The Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(6).

TikTok's Motion to Dismiss is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities in support of the Motion; the Declaration of Isabella L. Solórzano and accompanying exhibits; and the Proposed Order, all filed concurrently herewith; the record in this action; and any evidence and argument that may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 10, 2026. Counsel for TikTok and counsel for Plaintiff discussed the position of each party with respect to each disputed issue that is the subject of this Motion.

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

1      MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

DATED: April 17, 2026    AXINN, VELTROP & HARKRIDER LLP

By: /s/ *Daniel S. Bitton*

DANIEL S. BITTON (SBN 320296)
dbitton@axinn.com
JACKLIN CHOU LEM (SBN 255293)
jlem@axinn.com
DARPAN R. SINGH (SBN 347052)
dsingh@axinn.com
ISABELLA L. SOLÓRZANO (SBN 345703)
isolorzano@axinn.com
55 Second Street
San Francisco, CA 94105
Telephone: (415) 490-1486
Facsimile: (415) 490-2001

CRAIG M. REISER (*pro hac vice pending*)
creiser@axinn.com
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2200
Facsimile: (212) 728-2201

 *Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., and*
*TikTok USDS Joint Venture LLC*

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

2    MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 4

    I.    The Communications Decency Act Immunizes TikTok From Each of Plaintiff's Claims .......................... 5

        A.    TikTok Is Immune Under Section 230(c)(1) Because Plaintiff Seeks to Hold TikTok Liable as a Publisher of Content ...................................................................................... 6

        B.    TikTok Is Also Immune Under Section 230(c)(2) Because Plaintiff Seeks to Hold TikTok Liable for Restricting Access to Material it Deemed Objectionable .......... 9

    II.    Plaintiff's Antitrust Claims Fail as a Matter of Law ......................... 11

        A.    Plaintiff Fails to Allege Antitrust Injury (Counts 1-4) ............. 12

        B.    Plaintiff Fails to Allege a Conspiracy or Agreement Involving TikTok (Counts 1-4) ............................. 14

        C.    Plaintiff Fails to Allege a Relevant Antitrust Market (Counts 1-4) .............................................................. 16

        D.    Plaintiff Fails to Allege Market Power (Counts 1-2, 4) ........... 18

    III.    Plaintiff's Remaining Claims Fail as a Matter of Law (Counts 5-10) ................................................................................ 20

CONCLUSION ................................................................................................... 23

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

**TABLE OF AUTHORITIES**

**Page(s)**

*Cases*

*618Media Dijital Hizmetler Ltd. Sirketi v. Apple Inc*,
    2025 WL 2614983 (N.D. Cal. Sept. 9, 2025) ................................................22

*A.B. v. Facebook, Inc.*,
    2021 WL 2791618 (C.D. Cal. June 1, 2021) ..................................................6

*Al-Ahmed v. Twitter, Inc.*,
    648 F. Supp. 3d 1140 (N.D. Cal. 2023) ........................................................6

*Apple Inc. v. Psystar Corp.*,
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................16, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................11

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ....................................................................................12

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)..............................................................5, 6, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................12, 14

*Bogard v. TikTok Inc.*,
    2025 WL 604972 (N.D. Cal. Feb. 24, 2025) .................................................7

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)......................................................................5

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001).......................................................................20

*ChriMar Systems, Inc. v. Cisco Systems, Inc.*,
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) ........................................................18

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023)............................................................................*passim*

*Coronavirus Rep. v. Apple, Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021)........................................12, 13

*Domen v. Vimeo, Inc.*,
   433 F. Supp. 3d 592 (S.D.N.Y. 2020)............................................................10

*Domen v. Vimeo, Inc.*,
   2021 WL 4352312 (2d Cir. Sept. 24, 2021)....................................................11

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022)..........................................................................12

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010).........................................................................20

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008)................................................................5, 6, 8

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) .........................................................9

*Flaa v. Hollywood Foreign Press Assoc.*,
   55 F.4th 680 (9th Cir. 2022)........................................................16, 18, 19

*Frost v. LG Elecs., Inc.*,
   801 F. App'x 496 (9th Cir. 2020)...................................................................15

*Frost v. LG Elecs., Inc.*,
   2018 WL 6256790 (N.D. Cal. July 9, 2018).................................................15

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018).........................................................................17

*Holomaxx Techs. v. Microsoft Corp.*,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011) .........................................................6

*Jackson v. Airbnb, Inc.*,
   2022 WL 16753197 (C.D. Cal. Nov. 4, 2022)...............................................6

iii   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009)......................................................................21

*Kendall v. Visa U.S.A.*,
 518 F.3d 1042 (9th Cir. 2008)..............................................................14, 15

*La Park La Brea A LLC v. Airbnb, Inc.*,
 285 F. Supp. 3d 1097 (C.D. Cal. 2017)..............................................5, 7

*Lancaster v. Alphabet Inc.*,
 2016 WL 3648608 (N.D. Cal. July 8, 2016)...........................................8

*LiveUniverse, Inc. v. MySpace, Inc.*,
 304 F. App'x 554 (9th Cir. 2008)..............................................12, 14

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
 164 F.4th 710 (9th Cir. 2026)....................................................18, 19

*McGuire v. Columbia Broad. Sys., Inc.*,
 399 F.2d 902 (9th Cir. 1968)........................................................16

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024) .......................................................................11

*Morton v. Twitter, Inc.*,
 2021 WL 1181753 (C.D. Cal. Feb. 9, 2021)..........................................3, 6

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
 795 F.3d 1124 (9th Cir. 2015)........................................................14

*Ogren v. Northrop Grumman Corp.*,
 2025 WL 3030578 (C.D. Cal. Sept. 10, 2025)........................................3

*Perfect 10, Inc. v. CCBill LLC*,
 488 F.3d 1102 (9th Cir. 2007)..........................................................6

*Prager Univ. v. Google LLC*,
 951 F.3d 991 (9th Cir. 2020)..........................................................22

*Rebel Oil Co. v. Atl. Richfield Co.*,
 51 F.3d 1421 (9th Cir. 1995)......................................................12, 18

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

iv  MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

*Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*,
    399 F. Supp. 3d 1018 (C.D. Cal. 2019)..........................................................19

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) .....................................................16, 17

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,
    2013 WL 5694452 (N.D. Cal. Oct. 18, 2013)................................................14

*Sambreel Holdings LLC v. Facebook, Inc.*,
    906 F. Supp. 2d 1070 (S.D. Cal. 2012) ..........................................................14

*Sidibe v. Sutter Health*,
    4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..............................................................19

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................................8

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017).......................................................................8

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021)..............................................................21

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)............................................................................12

*Spinelli v. NFL*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015)..................................................................17

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011)............................................................14

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007)......................................................17, 18

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)..........................................................................21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...........................................................14

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

v       MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

*ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*,
  871 F. Supp. 2d 905 (D. Az. 2012) ............................................................ 21

*Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*,
  2024 WL 4312217 (N.D. Cal. Sept. 25, 2024) ....................................... 18

*Water, Inc. v. Everpure, Inc.*,
  2011 WL 13176096 (C.D. Cal. Aug. 23, 2011) ...................................... 21

*Wright v. Charles Schwab & Co.*,
  2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) ........................................ 20

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................. 11

*Yuksel v. Twitter, Inc.*,
  2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) .......................................... 8

**Statutes**

15 U.S.C. § 14 ....................................................................................................... 16

15 U.S.C. § 1125(a)(1)(B) ................................................................................... 22

47 U.S.C. § 230 ....................................................................................................... 5

47 U.S.C. § 230(c)(1) ............................................................................................ 5

47 U.S.C. § 230(c)(2) ....................................................................................... 6, 10

47 U.S.C. § 230(f)(2) ............................................................................................ 7

Cal. Bus. & Prof. Code § 17200 ....................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 9(b) .............................................................................................. 20

Fed. R. Civ. P. 12(b)(6) ................................................................................ 11, 20

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

vi   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

## INTRODUCTION

Plaintiff's claims against TikTok Inc., ByteDance Inc., and TikTok USDS Joint Venture LLC (collectively, "TikTok") are nothing more than a series of grievances about TikTok's decision to remove certain content Plaintiff posted on TikTok's platform that violated TikTok's gambling and intellectual property policies and Terms of Service.[1] That reality—which is apparent on the face of Plaintiff's Amended Complaint—is the beginning and end of this case. Section 230 of the Communications Decency Act ("CDA") immunizes TikTok from such claims because they challenge TikTok's exercise of its editorial function. Plaintiff's blunderbuss of ten legal theories of liability does not and cannot change the fact that TikTok is immune from suit.

Plaintiff's Amended Complaint fails at the threshold for seeking to hold TikTok liable for conduct that is immune from suit—but it is deficient for numerous other reasons as well:

*First*, Plaintiff's antitrust claims (Counts 1-4) fail because Plaintiff does not allege a plausible connection between its alleged injury—its loss of livestream sales of certain sports memorabilia on TikTok—and harm to competition in the alleged market.

*Second*, those antitrust claims fail because Plaintiff alleges no facts that can plausibly support its conclusory assertion that TikTok conspired to help Fanatics obtain a monopoly in a sports memorabilia market. Indeed, that conspiracy theory is implausible on its face. TikTok does not compete in the sale of sports memorabilia and has no plausible incentives to help create a monopoly seller of such products. To the contrary, if anything, it is in TikTok's interest to grow the

---

[1] This motion does not address claims against defendant ByteDance Ltd., which is incorporated in the Cayman Islands, Amended Complaint ("Amend. Compl.") ¶ 51, and has not been served.

number of sports memorabilia sellers on its platform, because more sellers typically generate more sales and ensure that prices on TikTok's platform remain competitive with prices on other platforms.

*Third*, the market definition and market power allegations undergirding Plaintiff's antitrust claims fail as a matter of law because they are conclusory, lacking in factual support, and facially implausible. For example, Plaintiff asserts that "live-stream, social media-based sales of NFL licensed sports memorabilia" is a separate relevant market but fails to explain why consumers would not switch to buying such sports memorabilia on other online platforms, or in retail stores, in response to price increases. Plaintiff also fails to allege any facts supporting its market power allegations, such as market shares or barriers to entry.

*Finally*, Plaintiff's remaining claims (Counts 5-10) each fail to state a claim because they are likewise based on conclusory statements and cannot plausibly establish that TikTok's conduct is a representation in commercial advertising, that it is unlawful, unfair, or fraudulent, or that it was in bad faith. Plaintiff also fails to identify a single contract or economic relationship that was disrupted by its alleged ban from TikTok.

For these reasons, and as set forth in greater detail below, Plaintiff's Amended Complaint should be dismissed in its entirety and with prejudice.

## BACKGROUND

According to Plaintiff, TikTok Inc. is a "social-media and e-commerce" platform that publishes and moderates third-party content, including content such as Plaintiff's sports-memorabilia livestreams. Amend. Compl. ¶¶ 44, 49, 50. Plaintiff alleges, moreover, that ByteDance Inc. "oversee[s] and manag[es] … the TikTok … platform," *id.* ¶ 52, and that TikTok USDS Joint Venture LLC is "responsible for the management, policy, governance, and operation of TikTok's U.S. services," *id.* ¶ 53. Plaintiff is a sports memorabilia seller who hosts

"livestream sales known as 'Box Breaks'" on TikTok and other "similar platforms." *Id.* ¶¶ 5, 38, 60, 61.[2]

Plaintiff alleges that it conducted livestreams governed by TikTok's Terms of Service to "operate a breaker business and sell sports memorabilia through TikTok's live-stream marketplace." *Id.* ¶ 234.[3] Those terms provide that TikTok "may remove [seller's] content and product listings … in its sole discretion, without any notice." Solórzano Decl., Ex. A, Seller Terms of Service for TikTok Shop (US) ("Seller TOS") ¶¶ 13.2–13.3. They likewise prohibit the sale of gambling and gamification products, as well as products that infringe intellectual property rights of others. *Id.*, Ex. A, Seller TOS ¶ 4.2(c) & (m); *id.*, Ex. B, Prohibited Products Policy at 6–7; *id.*, Ex. D, Intellectual Property Policy at 1–3.

As Plaintiff acknowledges, TikTok removed Plaintiff's content and product listings for violating TikTok's Terms of Service regarding intellectual property rights and gambling. *See* Amend. Compl. ¶ 246(a) (describing "trademark and copyright violations"); *id.* ¶ 246(b) (describing "[g]amblification violations," which Plaintiff defines as "allegations of gambling"). Yet, it asserts that TikTok is liable for removing its content because it participated in an alleged conspiracy with

---

[2] The Court may consider at this juncture TikTok's Terms of Service, commercial agreements, and TikTok's publicly available policies, *see* Isabella L. Solórzano Declaration ("Solórzano Decl.") Exhibits ("Ex.") A-D, because Plaintiff incorporated them by reference into its Amended Complaint. Amend. Compl. ¶¶ 29-31, 43, 51, 53, 81, 92, 234; *Ogren v. Northrop Grumman Corp.*, 2025 WL 3030578 at *7 (C.D. Cal. Sept. 10, 2025) (Staton, J.) (incorporating by reference seven exhibits that were referenced in the complaint or were "necessarily implicate[d]" in the complaint); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 9, 2021).

[3] The term "Box Break" or "break" typically refers to the situation when a sealed pack, box, or case of items—sports collectibles or memorabilia, such as trading cards or football helmets—is opened during a livestream and the contents are distributed to paying customers. *See* Amend. Compl. ¶¶ 5, 85; *see also* Solórzano Decl. Ex. C, Gambling Policy at 3.

3  MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP<br>55 Second Street<br>San Francisco, CA 94105<br>Tel: 415.490.2000 | Fax: 415.490.2001

defendants Fanatics Inc. ("Fanatics"), the National Football League, NFL Properties LLC, NFL Enterprises LLC (together, the "NFL"), and certain unspecified parties to "suppress[]" and "ban[]" Plaintiff and other breakers. *Id.* ¶ 8. According to Plaintiff, TikTok did this because it "sought to leverage its dominance in memorabilia live-streaming … to enhance its valuation in anticipation of a sale to U.S. owners." *Id.* ¶ 130.

Despite alleging this sweeping conspiracy theory, Plaintiff alleges nothing more than the following facts as to TikTok Inc.'s supposed participation in it:

- TikTok banned, suppressed, removed, suspended, excluded, de-platformed, or algorithmically demoted breakers like Plaintiff, *id.* ¶¶ 8, 32, 39, 70–71, 74, 77, 80–82, 86, 92, 96, 99, 106, 121(a), 122, 147(a), 157, 161, 173, 182(d), 192(a), 201–202(a), 204, 227, 237(a) and (d), 246(c);

- TikTok misrepresented to consumers and TikTok's content moderation team that Fanatics alone held exclusive rights to NFL-branded merchandise, *id.* ¶¶ 76, 81, 91–92, 121, 147, 183, 211–213, 216–217; and

- TikTok eliminated client representatives at TikTok who assisted breakers like Plaintiff in protesting or appealing a ban, *id.* ¶ 97.

These three categories of actions are the totality of Plaintiff's allegations against TikTok Inc., and Plaintiff alleges nothing as to ByteDance Inc. or TikTok USDS Joint Venture LLC other than that they are affiliates of TikTok Inc.

## ARGUMENT

Each of Plaintiff's claims challenges TikTok's purportedly wrongful suspension and ban of Plaintiff and other "breakers" from the TikTok platform for violating TikTok's Terms of Service and policies against gambling and intellectual property theft. Because Plaintiff seeks to hold TikTok liable for TikTok's exercise of its traditional editorial function and for taking action to protect its users from

MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

objectionable content that violated its policies and Terms of Service, the Amended Complaint should be dismissed in its entirety and with prejudice pursuant to Section 230.

Plaintiff's Amended Complaint should be dismissed for the additional, independent reason that it fails to state a claim upon which relief may be granted. *First*, Plaintiff's federal and state law antitrust claims fail because Plaintiff does not allege (much less, plausibly plead) antitrust injury, the existence of a conspiracy or agreement, a relevant market, or market power. *Second*, Plaintiff's other claims fail because they are conclusory and unsupported by any facts.

## I.    The Communications Decency Act
## Immunizes TikTok From Each of Plaintiff's Claims

Congress enacted the Communications Decency Act, 47 U.S.C. § 230, to encourage service providers like TikTok to engage in voluntary content moderation without fear of liability. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (emphasizing that Congress enacted Section 230 to immunize interactive computer services from liability for engaging in voluntary content moderation); *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1108 (C.D. Cal. 2017) (finding that Section 230 accomplished "Congress' goal of promoting the development of e-commerce" (citation modified)).

Section 230 encourages content moderation in two key respects. First, Section 230(c)(1) immunizes an "interactive computer service," 47 U.S.C. § 230(c)(1), for exercising "a publisher's traditional editorial functions" such as "deciding whether to publish, withdraw, postpone or alter content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Second, Section 230(c)(2) extends beyond publication decisions to immunize service providers for claims based on "any action" taken "voluntarily" in "good faith to restrict access to or

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

5    MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

availability of material" the provider considers to be "obscene … or otherwise objectionable." 47 U.S.C. § 230(c)(2); *Barnes*, 570 F.3d at 1105.

"The Ninth Circuit, along with a majority of the federal circuits, have read Section 230 to establish broad federal immunity to *any cause of action* that would make service providers liable for information originating with a third-party user of the service." *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) (citing *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)) (emphasis in original). Courts aim to "resolve Section 230 immunity at the early stages of litigation" to ensure that service providers like TikTok do not have "to fight costly and protracted legal battles." *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *1 (C.D. Cal. Nov. 4, 2022) (quoting *Roommates*, 521 F.3d at 1175). When, as here, a plaintiff asserts claims for which a service provider is immune under Section 230(c)(1) or (c)(2) (or both), they should be dismissed. *See e.g.*, *Jackson*, 2022 WL 16753197, at *3 (dismissing complaint under Section 230(c)(1)); *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1162 (N.D. Cal. 2023) (same); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104–05 (N.D. Cal. 2011) (dismissing complaint under Section 230(c)(2)).

### A.   TikTok Is Immune Under Section 230(c)(1) Because Plaintiff Seeks to Hold TikTok Liable as a Publisher of Content

TikTok is immune from Plaintiff's suit under Section 230(c)(1) because "(1) [TikTok] is a provider or user of an interactive computer service; (2) the information for which Plaintiff seeks to hold [TikTok] liable is information provided by another information content provider; and (3) Plaintiff's claim seeks to hold [TikTok] liable as the publisher or speaker of that information." *A.B. v. Facebook, Inc.*, 2021 WL 2791618, at *3 (C.D. Cal. June 1, 2021).

There is no serious dispute that the first and second elements of this test are met. Plaintiff refers to TikTok as an "e-commerce platform," "e-commerce ecosystem," "marketplace," "online sales platform[]," "online platform," "social-

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

6   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

media platform," and "live-commerce platform." Amend. Compl. ¶¶ 26, 35, 38–39, 46, 49–50, 52, 58, 70, 77. By their nature, social-media and e-commerce platforms are systems that "provide[] or enable[] computer access by multiple users to a computer server," including "access to the Internet." 47 U.S.C. § 230(f)(2). Thus, Plaintiff concedes that TikTok is an "interactive computer service" as that phrase is defined for purposes of Section 230(c)(1). *Bogard v. TikTok Inc.*, 2025 WL 604972, at *17 (N.D. Cal. Feb. 24, 2025) ("There is no dispute that Defendants [including TikTok] are providers of interactive computer services.").

The Amended Complaint likewise acknowledges that the "information" on which Plaintiff's claims are based was "provided by another," namely Plaintiff itself—and not TikTok. Amend. Compl. ¶¶ 44, 60, 61, 70. Nowhere does Plaintiff allege that TikTok had anything to do with the creation of Plaintiff's content. That TikTok allegedly charges fees for use of its platform and generates revenue, *id.* ¶¶ 27–28, 33, 39, does not change the conclusion that the content is Plaintiff's, not TikTok's. *La Park La Brea A LLC*, 285 F. Supp. 3d at 1106 (reasoning that a platform's "payment processing responsibilities" are irrelevant in Section 230 analysis because platform did not have "complete control over the content at issue").

The third element for applying immunity under Section 230(c)(1) is also met because Plaintiff's grievances all amount to an attempt to hold TikTok liable as a publisher of Plaintiff's content. In particular, and as discussed earlier, the totality of Plaintiff's plausible allegations are that TikTok:

- **Exercised editorial and enforcement discretion.** According to Plaintiff, TikTok banned, suppressed, removed, suspended, excluded, de-platformed, or algorithmically demoted breakers like Plaintiff, Amend. Compl. ¶¶ 8, 32, 39, 70–71, 74, 77, 80–82, 86, 92, 96, 99, 106, 121(a), 122, 147(a), 157, 161, 173, 182(d), 192(a), 201–202(a), 204, 227, 237(a) and (d), 246(c);

7    MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

- **Exercised its publishing function by communicating and explaining content moderation decisions.** Plaintiff alleges that TikTok misrepresented to consumers and TikTok's content moderation team that Fanatics alone held exclusive rights to NFL-branded merchandise, *id.* ¶¶ 76, 81, 91–92, 121, 147, 183, 211–213, 216–217; and

- **Exercised its publishing function by deciding how moderation enforcement decisions would be reviewed and managed.** Plaintiff claims that TikTok eliminated client representatives who assisted breakers like Plaintiff in protesting or appealing a ban, *id.* ¶ 97.

Each of these alleged actions relate to TikTok's moderation of third-party content and can be "boiled down to deciding whether to exclude material that third parties seek to post online," which is exactly what Section 230 is designed to protect. *Roommates*, 521 F.3d at 1171–72. And each implicates "publication involv[ing] reviewing, editing, and deciding whether to publish or withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102; *see also Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) ("[The plaintiff] seeks to hold [defendant] liable for its decision to suspend [plaintiff's] account, [defendant] is immune under the CDA."); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (dismissing, under Section 230(c)(1), complaint alleging YouTube took down plaintiff's poems and videos based on alleged false assertions of copyright); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F.Supp.3d 1088, 1090–97 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (finding Section 230 immunity barred claims where defendant acted as a publisher by allegedly restricting access to its platform without adequate notice or explanation).

Each of Plaintiff's ten claims challenges these three categories of actions

8    MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

allegedly taken by TikTok. In particular, Counts 1 through 10 each challenge TikTok's editorial and enforcement discretion.[4] Count 8 also challenges TikTok's explanation of its content moderation policies, Amend. Compl. ¶¶ 212, 216 (blaming TikTok for its "disseminat[ion of] [] misrepresentations through platform policies, moderation practices, and consumer-facing communications"). The single shotgun-pleading allegation (in Amend. Compl. ¶ 97) that takes issue with TikTok's decision as to how moderation decisions would be reviewed and managed is merely incorporated by reference in each count.

Because all of Plaintiff's claims try to hold TikTok liable as a publisher that moderated Plaintiff's content, TikTok is immune from Plaintiff's claims. *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119–20 (N.D. Cal. 2020) (finding Section 230 immunity for "claims [] based on Facebook's decision not to publish [plaintiff's] content" because "Ninth Circuit law … unambiguously establishes that [such] claims treat Facebook as a publisher" of plaintiff's content). For this reason alone, the Amended Complaint should be dismissed in its entirety and with prejudice.

**B.    TikTok Is Also Immune Under Section 230(c)(2) Because Plaintiff Seeks to Hold TikTok Liable for <u>Restricting Access to Material it Deemed Objectionable</u>**

Plaintiff's Amended Complaint should also be dismissed in its entirety for the separate reason that TikTok is immune from Plaintiff's claims under Section 230(c)(2). That provision of the CDA immunizes "any action voluntarily taken in good faith to restrict access to or availability of material that the provider …

---

[4] *See* Amend. Compl. ¶¶ 121(a) (Count 1; "[b]anning breakers"), 147(a) (Count 2; same), 161 (Count 3; same), 173 (Count 4; same), 182(a), (d) (Count 5; "exclud[ing]" and "permanently demot[ing]" breakers), 192(a) (Count 6; "banning Plaintiff's TikTok account" ), 202 (Count 7; same), 208 (Count 8; re-alleging and incorporating by reference previous allegations about being banned), 227 (Count 9; "enforcing bans" and "demoting breakers"), 237 (Count 10; "banning" Plaintiff).

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

considers to be obscene … or otherwise objectionable." 47 U.S.C. § 230(c)(2).

First, as described above, all the TikTok actions Plaintiff complains of relate to TikTok's process for removing or restricting from its platform content that violates its policies and Terms of Service.

Second, there is no dispute that TikTok took action against Plaintiff's content because TikTok believed that content violated TikTok's policies and Terms of Service and was objectionable. Plaintiff's own Amended Complaint admits that TikTok's Terms of Service "govern[] Plaintiff's ability to operate a breaker business and sell sports memorabilia through TikTok's live-stream marketplace." Amend. Compl. ¶ 234. Those terms make clear that some forms of breaking amount to gambling and that gambling activity is prohibited, that TikTok may remove any IP-infringing material from its platform and ban accounts that repeatedly infringe on the IP rights of others, and that TikTok may suspend or permanently disable accounts if TikTok reasonably believes its policies have been violated. Solórzano Decl., Ex. A, Seller TOS ¶ 4(c); *id.*, Ex. B, Prohibited Products Policy at 6–7, 14; *id.*, Ex. D, Intellectual Property Policy at 1–3. Plaintiff's Amended Complaint acknowledges that Plaintiff's content was removed pursuant to these very policies—*i.e.*, that its account was flagged for "trademark and copyright violations" as well as "[g]amblification violations (allegations of gambling)," both of which resulted in "violations and permanent bans." Amend. Compl. ¶ 246(a)–(b).

Plaintiff evidently disagrees with TikTok's determination that it violated the Terms of Service, and it disagrees with how TikTok reached that determination. *See* Amend. Compl. ¶ 31. But Plaintiff's disagreement is irrelevant. TikTok is still immune from suit under Section 230(c)(2) because the substance of Plaintiff's allegations challenges TikTok's good-faith removal of material it deemed objectionable. *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 603–04 (S.D.N.Y. 2020) (finding that 230(c)(2) immunity applied where defendant removed

10   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

plaintiffs' video for violating its guidelines without needing to determine whether the videos in fact did), *aff'd on other grounds*, 2021 WL 4352312 (2d Cir. Sept. 24, 2021).

Moreover, Plaintiff's bare allegations that TikTok must have acted in bad faith because it "arbitrarily bann[ed] Plaintiff's account," "conspir[ed] with Fanatics and the NFL to exclude Plaintiff," "misrepresent[ed] that only Fanatics merchandise was authorized," and "permanently demot[ed] Plaintiff's algorithmic ranking," Amend. Compl. ¶ 237, are conclusory and do not support a claim of bad faith in any event. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, as discussed below, Plaintiff's contention that TikTok conspired with the NFL and Fanatics is wholly implausible, and the facts that Plaintiff *does* allege are equally consistent with a good-faith attempt by TikTok to enforce its policies and Terms of Service. *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (finding a lack of bad faith where Facebook acted to enforce its user agreement).

* * *

In short, each of Plaintiff's claims is rooted in a challenge to TikTok's decisions to remove content from its platform—exactly the kinds of claims Section 230 is meant to bar in order to protect the First Amendment rights of platforms like TikTok to "exercise [] editorial control and judgment." *Moody v. NetChoice, LLC*, 603 U.S. 707, 738–41 (2024). Because TikTok is immune for the conduct of which Plaintiff complains, the Amended Complaint should be dismissed in its entirety and with prejudice.

## II. Plaintiff's Antitrust Claims Fail as a Matter of Law

Aside from Section 230 immunity, Plaintiff's claims also fail for the separate reason that they do not state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff attempts to advance these claims with conclusions and legal recitations, rather than facts, and therefore fails to plausibly plead these claims; in fact, many of Plaintiff's allegations are implausible on their face. *See*

11    MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("To survive a motion to dismiss brought under [FRCP] 12(b)(6), a complaint must set forth a claim to relief that is plausible on its face.").

### A.   Plaintiff Fails to Allege Antitrust Injury (Counts 1-4)

"Causal antitrust injury[] is an element of all antitrust suits." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). To establish antitrust injury, a plaintiff must show that his injury "flows from that which makes the conduct unlawful" and is one that "the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

Plaintiff fails to plead antitrust injury because its claimed injuries do not "stem[] from a competition-*reducing* aspect or effect" of Defendants' conduct. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in original). To the contrary, the harm Plaintiff claims—loss of sales, customer base, goodwill, algorithmic seniority, and market visibility—flows solely from TikTok's protected conduct in deciding whether to publish Plaintiff's content. *See e.g.*, Amend. Compl. ¶¶ 32, 38–39, 70–71,149. This conduct is squarely protected by Section 230 and is not anticompetitive or competition-reducing. *Coronavirus Rep. v. Apple, Inc.*, 2021 WL 5936910, at *15 (N.D. Cal. Nov. 30, 2021) (finding no antitrust injury where Apple decided which apps are allowed on the App Store because that is not a "harm the antitrust laws were designed to protect").

Moreover, while Plaintiff alleges harm to itself, it alleges no facts showing the type of harm that the antitrust laws are designed to prevent—namely, harm to the competitive process. *See e.g.*, *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) (emphasizing antitrust injury "means harm to the process of competition and consumer welfare, not harm to individual competitors"); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022) (finding no antitrust injury where the plaintiff "at most, alleged that Google mistreated [the plaintiff] as a Google customer" and not that "this

12   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

mistreatment harmed competition in the [relevant] market"). Plaintiff pleads no facts to support its litany of naked legal conclusions that Defendants' actions harmed competition—*e.g.*, that they "imposed market-level harm," "suppress[ed] competition beyond Plaintiff," and "inflicted harm to competition and consumer welfare," Amend. Compl. ¶¶ 8, 39, 78–79, 99, 102, 103–104, 109, 150.

Indeed, despite Plaintiff's countless unspecified references to "other breakers" or "similarly situated breakers," *see*, *e.g.*, *id.* ¶¶ 2, 4, 26–27, 31–32, 38–39, 80–82, 86, Plaintiff does not name a single other breaker who was harmed, much less facts to establish that harm to breakers means harm to the competitive process. *See Coronavirus Rep.*, 2021 WL 5936910, at *13–15 (finding allegations insufficient where statements of "rejection" or "suppression" in the market and general harm to "competitors" and "the market" were "conclusory" and "confined to specific harms experienced by Plaintiffs or a small group of competitors").

Plaintiff's conclusory allegations about market-wide harm—*i.e.*, harm to a purported market for "the live-stream, social-media-based retail sale of licensed NFL sports memorabilia in the United States," Amend. Compl. ¶ 112—are also implausible, because they relate only to TikTok's actions on its own platform:

- Plaintiff admits that there are other "similar platforms" on which it can livestream or on which consumers can buy NFL licensed sports memorabilia, *id.* ¶¶ 5, 39, 113, 116;

- Plaintiff alleges no facts demonstrating TikTok's actions affected any platform other than TikTok itself; and

- Plaintiff asserts no facts supporting its conclusory allegations that it or other breakers have been banned from selling sports memorabilia on other "similar platforms." *Id.* ¶¶ 5, 159.

Plaintiff's allegations that "Defendants' coordinated threats, intimidation, and coercion … caused online platforms, including TikTok, eBay, and Meta, to ban or suppress properly licensed independent breakers," *id.* ¶ 39, are conclusory,

13      MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

without any supporting facts or specificity about how Defendants supposedly did this, or *which* Defendants it is referring to. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) ("It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1116–17 (N.D. Cal. 2008) (finding "general allegations" about "all defendants," "Japanese defendants," or a single corporate entity like "Hitachi" insufficient). Plaintiff, therefore, fails to allege market foreclosure necessary to establish market-wide harm to competition. *See, e.g.*, *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1079 (S.D. Cal. 2012); *LiveUniverse, Inc.*, 304 F. App'x at 557 (affirming dismissal where the plaintiff "d[id] not explain how MySpace's actions *on its own website* can reduce consumers' choice or diminish the quality of their experience on *other* social networking websites, which is the relevant market").

## B. Plaintiff Fails to Allege a Conspiracy or <u>Agreement Involving TikTok (Counts 1-4)</u>

To plead a conspiracy under the Cartwright Act or the Sherman Act, Plaintiff must allege facts plausibly showing that an agreement existed. *See, e.g.*, *Twombly*, 550 U.S. at 545; *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075–78 (E.D. Cal. 2011); *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2013 WL 5694452, at *8–11 (N.D. Cal. Oct. 18, 2013). Plaintiff has pled no such facts.

First, Plaintiff offers conclusions and legal labels, not facts, to support its conspiracy claim. *See Kendall v. Visa U.S.A.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008). For example, Plaintiff asserts that Defendants "coordinated," "knowingly participated," "acted in concert" and were "willing conspirator[s]" or "willing participant[s]," *see, e.g.*, Amend. Compl. ¶¶ 8, 81, 106, 130, 145, but does not allege "who, did what, to whom (or with whom), where, and when." *Kendall*, 518

14   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

F.3d at 1047–48 (affirming dismissal of conspiracy claim where allegations that appellants "knowingly, intentionally and actively participated [] in the alleged scheme" was "nothing more than a conclusory statement"). Plaintiff's allegation, "upon information and belief" that "beginning in or about 2022 representatives of Fanatics, the NFL [] and TikTok personnel engaged in direct communications" is far too general to support Plaintiff's conspiracy claim—even at this early stage. *See Frost v. LG Elecs., Inc.*, 2018 WL 6256790, at \*4–5 (N.D. Cal. July 9, 2018) (dismissing as too speculative general allegations that executives "reached [an] agreement" somewhere between the companies' corporate headquarters "no later than January 1, 2005"), *aff'd sub nom.*, *Frost v. LG Elecs., Inc.*, 801 F. App'x 496 (9th Cir. 2020). Absent specific facts, Plaintiff's conspiracy claim is based on nothing but its say so.

Second, Plaintiff's claims that TikTok conspired with Fanatics to help Fanatics acquire a monopoly are implausible. TikTok does not compete with Plaintiff or Fanatics in the alleged market for the "live-stream, social-media-based retail sale of licensed NFL sports memorabilia." Amend. Compl. ¶¶ 112, 45 (describing Fanatics as a "global digital sports platform"), 50 (describing TikTok as a "social media and e-commerce platform"), 57 (describing the NFL Properties as "the commercial licensing and marketing arm of the NFL"). And, it is entirely unclear and counterintuitive why TikTok helping Fanatics acquire a monopoly in this purported market would "enhance [TikTok's] valuation in anticipation of a sale to U.S. owners." *Id.* ¶ 130. TikTok benefits from more, rather than fewer, sellers on its platform, as Plaintiff acknowledges. *Id.* ¶¶ 27–28 (alleging TikTok "received commissions" and "generate[s] substantial revenue" from seller activity). It is much more plausible that TikTok exercised its publisher function by suspending Plaintiff's account because Plaintiff violated TikTok's Terms of Service and policies. *Id.* ¶¶ 29–31, 246(a)–(b). *See Kendall*, 518 F.3d at 1049 (affirming dismissal of conspiracy claim where alleged facts "could just as easily

15   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

suggest rational, legal business behavior … as they could suggest an illegal conspiracy").

Finally, Plaintiff's exclusive dealing claim under the Clayton Act fails as to TikTok for two independent reasons. First, exclusive dealing under the Clayton Act reaches only a person who "makes a sale or contracts for sale of [commodity] goods," and Plaintiff pleads no TikTok sale or contracts-for-sale commitment. 15 U.S.C. § 14; Amend. Compl. ¶¶ 123, 157. Second, the only exclusive agreement alleged in the Amended Complaint is purportedly between Plaintiff and Fanatics or Fanatics and the NFL—not TikTok. *See McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968) (noting the language of Clayton Act § 3 "defines liability in terms of a person who makes a sale or contracts for sale" and finding no cause of action as to a non-seller defendant).

### C.     Plaintiff Fails to Allege a Relevant Antitrust Market (Counts 1-4)

"Market definition is essential to any antitrust case," including each of Plaintiff's claims under the Sherman Act, Clayton Act, and Cartwright Act. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023); *see also Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1196, 1203–04 (N.D. Cal. 2008) ("The relevant-market inquiry does not differ [for Sherman Act Section 1 or Section 2, and Clayton Act Section 3 claims] in any material respect."); *Flaa v. Hollywood Foreign Press Assoc.*, 55 F.4th 680, 688 (9th Cir. 2022) ("Cartwright Act mirrors the analysis under the Sherman Act"). "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, … the relevant market is legally insufficient." *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022). Plaintiff's market definition fails on that basis as a matter of law.

Plaintiff's alleged relevant market, the "live-stream, social-media-based retail sale of licensed NFL sports memorabilia in the United States," Amend. Compl. ¶ 112, is implausibly narrow because it is limited to a single retail channel

16     MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

and a single league. Plaintiff has not pled any facts to establish a lack of economic substitutability between products and services within and outside its alleged relevant market. *Reilly*, 578 F. Supp. 3d at 1109 ("[A] plausible market requires … alleged facts explaining why seemingly similar products excluded from the market are not substitutes for those in the market."). Plaintiff acknowledges that consumers purchase sports memorabilia on Meta, eBay, "general e-commerce platforms," and in "brick-and-mortar retail" stores. Amend. Compl. ¶¶ 39, 113, 115–116. But Plaintiff does not allege any facts explaining why consumers would not purchase NFL licensed sports memorabilia through these other sales channels in response to increases of prices for those goods on "live-stream, social-media." *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (rejecting proposed relevant market where there were no facts alleged demonstrating users would not switch to another competitor outside the proposed relevant market). Nor has Plaintiff alleged any facts establishing a lack of economic substitutability between NFL-licensed sports memorabilia and other sports memorabilia. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120–23 (9th Cir. 2018); *Coronavirus*, 85 F.4th at 956 (affirming rejection of a relevant market because the complaint "d[id] not attempt to demonstrate the cross-elasticity of [] users' demand" for other similar products "as it must"); *see also Spinelli v. NFL*, 96 F. Supp. 3d 81, 113 (S.D.N.Y. 2015) (rejecting market limited to NFL-related photographs because "there exist available substitutes for the intellectual property of a professional sports organization.").

Plaintiff's assertion that consumers "experience platform lock-in effects" with "live-stream sports memorabilia sales" that "differ materially from traditional retail or static online sales," Amend. Compl. ¶ 115, is not only conclusory but also defies common sense. Plaintiff presents no facts demonstrating that a consumer "would be unwilling to patronize [] or [would] not switch [] to another [sports

17     MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

memorabilia sales channel] if even the most nominal of fees were charged." *Streamcast Networks, Inc.*, 547 F. Supp. 2d at 1095.

### D. Plaintiff Fails to Allege Market Power (Counts 1-2, 4)

The Court's analysis need go no further than Plaintiff's failure to plausibly allege a relevant market. *See Coronavirus Rep.*, 85 F.4th at 957 ("Without a defined relevant market in terms of product or service, one cannot sensibly or seriously assess market power."). Even so, Plaintiff also has failed to allege that any of the Defendants, including TikTok, have market power in any relevant product market.

The market power requirement applies equally to claims under Section 1 and Section 2 of the Sherman Act, as well as claims under the Cartwright Act, and failing to sufficiently and plausibly plead such market power is fatal to such claims. *See Rebel Oil Co.*, 51 F.3d at 1444; *see also ChriMar Systems, Inc. v. Cisco Systems, Inc.*, 72 F. Supp. 3d 1012, 1019–20 (N.D. Cal. 2014); *Volkswagen Grp. of Am., Inc. v. Smartcar*, *Inc.*, 2024 WL 4312217, at *12 (N.D. Cal. Sept. 25, 2024). A plaintiff can plead market power directly "by alleging restricted output [or] supracompetitive prices," or indirectly by alleging a "defendant owns a dominant share of [the] market" and that there are "significant barriers to entry" in that market. *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 724 (9th Cir. 2026). Plaintiff does neither and, therefore, its antitrust claims fail. *See Flaa*, 55 F.4th at 693.

Plaintiff pleads no facts demonstrating Defendants "restricted output" or charged "supracompetitive prices" and relies solely on conclusory statements. *Malheur Forest Fairness Coal.*, 164 F.4th at 729–31 (finding no direct evidence of market power where allegations of restricted output and supracompetitive prices either did not "offer sufficient detail from which to infer more than the mere possibility of misconduct" or were "conclusory" (citation modified)). For example, Plaintiff baldly asserts that Defendants' conduct harmed competition because

18   MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

"prices [were] inflated by the [unnamed] monopolist," Amend. Compl. ¶ 109, that "market prices were artificially inflated," *id.* ¶ 150, and that "the value of collectibles" was "unfairly depressed," *id.*, but alleges no facts supporting those conclusory statements. *See Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1180 (N.D. Cal. 2013). Similarly, Plaintiff makes the conclusory allegation that "Defendants reduced the number of sellers [and] restricted output," Amend. Compl. ¶ 104, but avers no facts demonstrating this to be the case. *See Malheur Forest Fairness Coal.*, 164 F.4th at 729–31 (affirming dismissal where market power allegations were conclusory).

Nor has Plaintiff sufficiently alleged market power based on indirect evidence. The Amended Complaint is devoid of any facts establishing market shares in the relevant market. *See e.g., Coronavirus Rep.*, 85 F.4th at 957 (affirming dismissal of antitrust claims where plaintiffs "could not, and did not" establish defendant "possesses a market share in a relevant market"); *Flaa*, 55 F.4th at 688, 693–94 (affirming dismissal of antitrust claims where the complaint "contains no quantitative allegations" demonstrating market power). Plaintiff's conclusory assertions that TikTok is a "dominant" live streaming platform, *see e.g.*, Amend. Compl. ¶¶ 130, 159–160, are insufficient and "not entitled to a presumption of truth." *Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1029 (C.D. Cal. 2019) (holding allegations that defendant "has a 'dominant position' in the home movies market" to be "conclusory assertions" "not entitled to a presumption of truth"). In addition, those assertions are irrelevant because Plaintiff's alleged relevant market is about the sale of NFL-licensed sports memorabilia on live streaming platforms, not live streaming platforms themselves. Plaintiff, moreover, has failed to allege facts to establish barriers to entry in a relevant market. Plaintiff alleges that TikTok *could* "create a barrier to entry for new sellers," Amend. Compl. ¶ 73, but that is a far cry

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

19    MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

from alleging facts to "show that there were *existing* barriers to entry." *Coronavirus Rep.*, 85 F.4th at 955.

### III.    Plaintiff's Remaining Claims Fail as a Matter of Law (Counts 5-10)

Plaintiff's remaining claims are equally deficient under Rule 12(b)(6) and should be dismissed as a matter of law in addition to being barred by Section 230.

*First*, Plaintiff's unfair competition claims (Counts 5 and 9) fail because Plaintiff has not sufficiently alleged facts showing that TikTok's actions were unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200. Plaintiff's claim under California's Unfair Competition Law's ("UCL") "unlawful" prong fails for the same reasons discussed above in Section II. *See* Amend. Compl. ¶ 181 (making bare assertions that TikTok's conduct is "unlawful" because TikTok violated federal and state antitrust law); *see also Apple Inc.*, 586 F. Supp. 2d at 1204 (dismissing UCL unfairness claim after concluding no antitrust claim existed); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001). Plaintiff's bald assertions that TikTok's enforcement of its Terms of Service were "unfair" and "offend established public policy, were immoral, oppressive, and substantially injurious to consumers and competitors," Amend. Compl. ¶ 182, do not satisfy the unfairness prong as they are simply "recitation of the legal standard." *Wright v. Charles Schwab & Co.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364–66 (2010) (holding that conclusory assertions that conduct was "immoral, unethical, oppressive, and unscrupulous" were insufficient to meet the unfairness prong of the UCL).

Plaintiff's claims under the UCL's fraudulent prong similarly are insufficient as they do not satisfy the heightened pleading standards of Rule 9(b). Plaintiff asserts that "Defendants made false and misleading statements to consumers and breakers," but offers no details to support that conclusion. Amend. Compl. ¶ 183. For example, Plaintiff alleges no facts about when and to whom TikTok purportedly made misleading statements. Without such allegations, Plaintiff cannot

20        MOTION TO DISMISS OF THE TIKTOK DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

state a claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009) (affirming dismissal of UCL claim on the basis of Rule 9(b) where plaintiff failed to state "what" misleading advertisements said or "when" it was exposed to them).

Plaintiff alleges common law unfair competition claims, but those claims are limited to situations where a defendant passes off goods as its own. Plaintiff fails to make any non-conclusory allegation of this. *Water, Inc. v. Everpure, Inc.*, 2011 WL 13176096, at *6 (C.D. Cal. Aug. 23, 2011) (dismissing common law unfair competition claim where plaintiff failed to allege "passing off" *i.e.*, selling one's goods as those of another).

*Second*, Plaintiff's tortious interference claims (Counts 6 and 7) fail because it has not identified any contract or economic relationship that was breached or disrupted, nor that TikTok had sufficient knowledge of such relationships. For example, Plaintiff concludes it has been harmed because its alleged ban from TikTok "sever[ed] access to customers with whom Plaintiff had contractual … relationships," Amend. Compl. ¶ 192, but pleads no facts demonstrating it "lost a contract [or] that a negotiation with a [c]ustomer failed." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). Failure to "identify a specific relationship with which the defendant interfered" is fatal, and Plaintiff's general allegations that "relationships had a high probability of producing future economic benefits," Amend. Compl. ¶ 199, do not meet that bar. *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Az. 2012) ("[S]peculative hope of a business expectancy is not enough."). Further, Plaintiff's allegations that TikTok "had knowledge of Plaintiff's contractual relationships[] [b]y virtue of their role in the memorabilia market and through their monitoring of TikTok activity," Amend. Compl. ¶¶ 191, 201, do "not create a plausible basis to conclude Defendant had knowledge of Plaintiff's third-party economic relations." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021).

MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

*Third*, Plaintiff's Lanham Act claim (Count 8) fails because TikTok's alleged conduct does not involve representations in commercial advertising. *See* 15 U.S.C. § 1125(a)(1)(B) (prohibiting the misrepresentation of goods or services in "commercial advertising or promotion"). While Plaintiff alleges that TikTok "disseminated [] misrepresentations through its platform policies, moderation practices, and consumer-facing communications," Amend. Compl. ¶ 216, these "do not constitute 'commercial advertising or promotion' as the Lanham Act requires." *Prager Univ. v. Google LLC*, 951 F.3d 991, 999–1000 (9th Cir. 2020) (finding alleged misrepresentations contained within the "terms of service, community guidelines, and contracts are not advertisements or a promotion").

*Fourth*, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails (Count 10) because it is based on conclusory allegations that TikTok "arbitrarily banning" Plaintiff's TikTok account was "not supported by any legitimate contractual purpose." Amend. Compl. ¶¶ 237–38. Notwithstanding those assertions, even Plaintiff acknowledges that its use of TikTok was governed by "TikTok's platform terms of service and commercial account agreements," Amend. Compl. ¶ 234, and that TikTok allegedly banned it for "trademark and copyright violations" and "[g]amblification violations." Amend. Compl. ¶ 246(a)–(b). While Plaintiff claims those violations were "wrongful" and that it was in "compliance with applicable laws and the lawful sale of licensed memorabilia," Amend. Compl. ¶¶ 237, 246, such conclusory allegations do not plausibly allege that TikTok acted in bad faith in allegedly banning Plaintiff's account. *618Media Dijital Hizmetler Ltd. Sirketi v. Apple Inc*, 2025 WL 2614983, *3–4 (N.D. Cal. Sept. 9, 2025) (finding "a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement" like terminating plaintiff's account in [defendant's] "sole discretion"). And as discussed above, Plaintiff cannot plead around Section 230 immunity by recasting TikTok's decision to ban or suspend Plaintiff as a breach of contract or a misapplication of TikTok's Terms of Service.

22   MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

# CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety. Because any amendment would be futile, and given TikTok's immunity from suit, dismissal should be with prejudice.


DATED: April 17, 2026          AXINN, VELTROP & HARKRIDER LLP

By: /s/ *Daniel S. Bitton*

DANIEL S. BITTON (SBN 320296)
dbitton@axinn.com
JACKLIN CHOU LEM (SBN 255293)
jlem@axinn.com
DARPAN R. SINGH (SBN 347052)
dsingh@axinn.com
ISABELLA L. SOLÓRZANO (SBN 345703)
isolorzano@axinn.com
55 Second Street
San Francisco, CA 94105
Telephone: (415) 490-1486
Facsimile: (415) 490-2001

CRAIG M. REISER (*pro hac vice pending*)
creiser@axinn.com
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2200
Facsimile: (212) 728-2201


*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., and*
*TikTok USDS Joint Venture LLC*

23          MOTION TO DISMISS OF THE TIKTOK
DEFENDANTS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for TIKTOK INC., BYTEDANCE INC., and TIKTOK USDS JOINT VENTURE LLC, certifies that this brief contains 6,971 words, which complies with the word limit of L.R. 11-6.1.


DATED: April 17, 2026          By:  */s/ Daniel S. Bitton*
                                     Daniel S. Bitton

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Tel: 415.490.2000 | Fax: 415.490.2001

24          MOTION TO DISMISS OF THE TIKTOK
                    DEFENDANTS