# Exhibit 2



**Alec Schultz**

PARTNER

1221 Brickell Avenue | Suite 900
Miami, FL 33131

305.630.8304 Direct

ASchultz@HilgersLaw.com

March 25, 2026

**VIA ELECTRONIC MAIL**

Jeremy C. Shafer
John Dalimonte
Aaron Dickey
Cary McDonald
Banner Legal
445 Marine View Ave, Suite 300
Del Mar, CA 92014
jshafer@bannerlegal.com
john@bannerlegal.com
aaron@dickeyanderson.com
cary@bannerlegal.com

Re: *GFC & Supply Inc. vs. TikTok Inc., et al* (Case No. 2:25-cv-10054-JLS-AGR)

Counsel:

I write on behalf of the National Football League, NFL Properties LLC, and NFL Enterprises LLC (collectively, the "NFL Entities") to address the Amended Complaint's apparent misunderstanding of the applicable law and facts, and in follow up to our telephone conversation on this topic.

The Amended Complaint asserts verifiably false allegations and presents claims unsupported by law. *See* Fed. R. Civ. P. 11(b). This letter provides notice that, if Plaintiff does not dismiss its claims within 14 days, the NFL Entities will serve a motion for Rule 11 sanctions.[1] Plaintiff's Rule 11 violations are particularly egregious given Plaintiff's flagrant infringement of the NFL Entities' intellectual property and the Amended Complaint's baseless attempt to portray the NFL Entities' lawful IP-enforcement efforts as wrongful conduct. The NFL Entities will defend their rights against Plaintiff's infringement, whether in this or another lawsuit, and will be entitled to treble damages and their costs and fees.

---

[1] The Amended Complaint's many defects are not limited to those outlined in this letter, and the NFL Entities reserve the right to raise additional defects in their Rule 11 motion or in this litigation.



**<u>Plaintiff Sells Counterfeit Products Infringing on the NFL Marks.</u>**

NFL Properties serves as the authorized representative of the NFL and its thirty-two member clubs ("Member Clubs") for the licensing and protection of the trademarks, team names, logos, helmet designs, slogans and other source-identifying indicia of the NFL and its Member Clubs (collectively, the "NFL Marks").

The Amended Complaint's allegations against the NFL Entities center on Plaintiff's sale or resale of merchandise bearing depictions of the NFL Marks. *See, e.g.,* Am. Compl. ¶¶ 2–4, 9–23, 75–79, 86–92. In particular, Plaintiff alleges that it "purchased authentic merchandise and memorabilia after the first sale from an owner or properly licensed seller who had the legal authority to sell such items, including merchandise bearing trademarked NFL and NFL Club logos, or items purchased and supplied directly from entities that held exclusive licensing rights." *Id.* ¶ 2.

However, many of Plaintiff's products feature depictions of the NFL Marks that were reproduced, imitated, exploited, copied, or used by Plaintiff without the permission of the NFL Entities. Plaintiff's sale of such products bearing unauthorized depictions of the NFL Marks violates the Lanham Act's prohibition on counterfeit sales. *See* 15 U.S.C. § 1114 ("Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution . . . or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action[.]"). Indeed, in just the past few weeks, Plaintiff has posted for sale on its TikTok account many helmets that bear unauthorized copies of NFL Marks. *See* Compilation of BigPapa Breaks Infringing Products, *attached as* Exhibit A. These examples reflect a sliver of Plaintiff's long-running infringement. To be clear, the NFL Entities have not licensed or otherwise authorized the use of the NFL Marks as depicted in these and many more of Plaintiff's products. Accordingly, these products are counterfeit and infringing.

Plaintiff's attempt to excuse its infringement by claiming a purported licensing agreement with the National Football League Players Association ("NFLPA"), *see* Am. Compl. ¶ 16–17, 29, is factually and legally baseless. A cursory search of the NFLPA's website reveals NFLPA's list of licensees. *See* NFLPA.com, "Browse



Licensees."[2] Plaintiff is not on this list. Previous versions of the site confirm that Plaintiff has never been on the list since it was launched in 2020.[3]

Even if Plaintiff did hold a license from NFLPA, such license would not extend to use of the NFL Marks.  The NFLPA represents NFL players; it is not authorized to, and does not, license the use of the NFL Marks. Rather, as explained above, NFL Properties is the authorized representative for the licensing and protection of the NFL Marks, and a third party looking to utilize NFL Marks on helmets or other products must obtain a license from NFL Properties. Plaintiff's contention otherwise reflects a basic misunderstanding of the NFL-NFLPA Collective Bargaining Agreement ("CBA").[4] Plaintiff falsely claims that the CBA grants NFL players and the NFLPA the right to use and license the use of NFL Marks. *See* Am. Compl. ¶¶ 9–14. Plaintiff appears to rely on the form player contract attached to the CBA as Appendix A. *See id.* ¶ 14.  But the only grants of rights in the form player contract flows from *the player* to the NFL, the NFL member club with which the player signs, and the NFLPA. *See* CBA at 334–36, ¶ 4(a)–(b) (detailing players' grants of rights).

There is no provision in the form player contract, the CBA or any other agreement that authorizes players or the NLFPA to license the NFL Marks, which a reasonable factual investigation would have revealed.[5]

**<u>The First-Sale Doctrine Does Not Legitimize Plaintiff's Infringement.</u>**

Plaintiff also falsely alleges, in addition or in the alternative, that its conduct is protected by the first-sale doctrine. *See* Am. Compl. ¶2. But the first-sale doctrine protects only the resale of genuine, not counterfeit, products: "[T]he owner of a particular copy . . . **lawfully made** under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy[.]"17 U.S.C. § 109 (emphasis added); *see also Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1064 (S.D. Cal. 2021) ("because Plaintiff alleges the sale of counterfeit trading cards, the first-sale defense does not apply").

---

[2] *Available at* https://nflpa.com/partners/licensees.

[3] *See* Wayback Machine, *available at* https://web.archive.org/web/20201101000000*/https://nflpa.com/partners/licensees.

[4] *Available at* https://nflpa.com/cba.

[5] Indeed, the licensing pre-qualification application on NFL.com makes clear that NFL Properties licenses the NFL Marks. *See, e.g.,* NFL Consumer Products Licensing Pre-Qualification Information, *available at* https://businessapps.nfl.net/NFLConsProd/Welcome/CpPrequalify.htm.



Plaintiff also appears to assert that simply because it or someone else purchased helmets from Riddell, an authorized supplier of NFL branded helmets that also sells unbranded helmets, Plaintiff or a third-party could copy, reproduce, imitate, or add NFL Marks to a Riddell helmet and sell that altered helmet as they wish. *See* Am. Compl. ¶¶ 84–94. Again, Plaintiff shows a basic misconception of trademark law. The first-sale doctrine does not protect sales where the goods are "materially different" from the authorized product and thus infringe on protected marks. *See, e.g., Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc.*, No. 2:17-cv-06650-ODW, 2018 WL 1989518, at \*3 (C.D. Cal. Apr. 24, 2018) (collecting cases) ("The resale of a materially different product constitutes trademark infringement because the product is not genuine and may cause confusion regarding the product's source, quality, or sponsorship.").

As explained above, the NFL Entities have never authorized the use of the NFL Marks on the products shown in Appendix A, among many other products that Plaintiff has sold. The first-sale doctrine thus cannot protect Plaintiff simply because it may have purchased a previously authorized product before it was altered to infringe the NFL Marks.

### Rule 11 Requires Sanctions for Plaintiff's Baseless Claims.

Rule 11 sanctions are appropriate given these and the many other falsehoods in the Amended Complaint. "The attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are warranted by existing law or a good faith argument for an extension, modification or reversal of existing law." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation omitted); *see also* Fed. R. Civ. P. 11(b).

As explained, the Amended Complaint is rampant with both factual and legal errors. *First*, even a cursory investigation would have revealed that Plaintiff has no licensing agreement with the NFLPA. But even if Plaintiff had a license agreement with the NFLPA, it would not matter. A plain reading of the CBA or research into the licensing requirements for NFL Marks would have revealed that the NFLPA had no power to license the NFL Marks—only NFL Properties is authorized to grant such licenses.

*Second*, the Amended Complaint is legally frivolous because it contravenes well-established law. The statute codifying the first-sale defense plainly states it applies only to "lawfully made" products—*i.e.* those products authorized to display the NFL Marks. 17 U.S.C. § 109. Consistent case law applying the doctrine, including those cases cited above, underscores the frivolity of Plaintiff's arguments. Likewise,



Plaintiff's attempt to recast as an unlawful conspiracy the NFL Entities' lawful, necessary, enforcement of their intellectual property rights against infringing and counterfeit products is so legally frivolous as to warrant sanctions.

* * *

Because Plaintiff cannot assert any lawful basis for its resale of counterfeit and/or infringing merchandise, the NFL Entities demand that Plaintiff voluntarily dismiss its Amended Complaint with prejudice. Otherwise, the NFL Entities will proceed with their motion to seek sanctions, including their costs and fees.

Best Regards,

Alec Schultz

12

# APPENDIX A

**SAMPLE INFRINGEMENT NO. 1**

*available at* https://www.tiktok.com/@bigpapabreaks/video/7620043695038958878



**SAMPLE INFRINGEMENT NO. 2**

*available at* https://www.tiktok.com/@bigpapabreaks/video/7620043695038958878



**SAMPLE INFRINGEMENT NO. 3**

*available at https://www.tiktok.com/@bigpapabreaks/video/7620042783293771038*



**SAMPLE INFRINGEMENT NO. 4**

*available at https://www.tiktok.com/@bigpapabreaks/video/7616334091931225375*



**SAMPLE INFRINGEMENT NO. 5**

*available at https://www.tiktok.com/@bigpapabreaks/video/7616335931137740062*



18

**SAMPLE INFRINGEMENT NO. 6**

Helmet pulled March 23, 2026 (9:23 PM EST) on BigPapa Breaks Tik Tok Live Break Post



**SAMPLE INFRINGEMENT NO. 7**

Helmet Pulled March 22, 2026 (8:14 PM EST) on BigPapa Breaks Tik Tok Live Break Post



**SAMPLE INFRINGEMENT NO. 8**

Helmet Pulled March 22, 2026 (1:48 PM EST) on BigPapa Breaks Tik Tok Live Break Post



**SAMPLE INFRINGEMENT NO. 9**

Helmet Pulled March 21, 2026 (6:23 PM EST) on BigPapa Breaks Tik Tok Live Break Post



**SAMPLE INFRINGEMENT NO. 10**

Helmet Pulled March 21, 2026 (5:23 PM EST) on BigPapa Breaks Tik Tok Live Break Post

