HILGERS PLLC
Alec Schultz (*Pro Hac Vice*)
1221 Brickell Avenue, Suite 900
Miami, FL 33131
Tel: (305)-630-8304
Email: aschultz@hilgerslaw.com

*Attorney for National Football League, NFL Properties LLC, & NFL Enterprises LLC*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GFC & SUPPLY INC., dba BIGPAPA BREAKS,<br><br>　　　　Plaintiff,<br>vs.<br><br>TIKTOK INC. and any successors in interest; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; FANATICS INC. and it successors in interest; FANATICS, LLC; FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC.; FANATICS HOLDINGS, INC.; FANATICS SPV, LLC; SILVER LAKE TECHNOLOGY MANAGEMENT, L.L.C.; NATIONAL FOOTBALL LEAGUE; NFL　PROPERTIES LLC; NFL ENTERPRISES LLC; AND DOES 1–50, INCLUSIVE,<br><br>　　　　Defendants. | Case No.: 2:25-cv-10054-JLS-AGR<br><br>**DEFENDANTS NATIONAL FOOTBALL LEAGUE, NFL PROPERTIES LLC, & NFL ENTERPRISES LLC's NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE CLAIMS**<br><br>Date: September 4, 2026<br>Time: 10:30 A.M.<br>Place: Courtroom 8A, 8th Floor<br>Judge: Hon. Josephine L. Staton |

## NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on September 4, 2026 at 10:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Judge Josephine L. Staton, located in the First Street U.S. Courthouse, 350 West 1st Street, Courtroom 8A, 8th Floor, Los Angeles, California 90012, Defendants National Football League, NFL Properties LLC, & NFL Enterprises LLC (collectively, the "NFL") move the Court for an order dismissing the Second Amended Complaint (ECF No. 103) filed by Plaintiff GFC & Supply Inc., d/b/a BigPapa Breaks ("Plaintiff") in this action in its entirety because:

1. Plaintiff lacks Article III standing for its claims against the NFL;
2. The *Noerr-Pennington* Doctrine, First Amendment, and California litigation privilege preclude all claims against the NFL; and
3. The Second Amended Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The NFL's Motion to Dismiss and Strike Claims is based on this Notice of Motion, the accompanying exhibits, and the Proposed Order all filed concurrently herewith; the record of this action; and any evidence and argument that may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 23, 2026. Counsel for the NFL and counsel for Plaintiff discussed the position of each party with respect to each disputed issue that is the subject of this Motion.

Dated: July 30, 2026

Respectfully Submitted,

By: */s/ Alec Schultz*
Luke Landers, Bar No. 315475
**HILGERS PLLC**

27001 Agoura Road, Suite 350
Calabasas, CA 91301
Tel: (310) 692-8385
Email: llanders@hilgerslaw.com

Alec Schultz
(*Pro Hac Vice*)
**HILGERS PLLC**
1221 Brickell Avenue
Suite 900
Miami, FL 33131
Tel: (305)-630-8304
Email: aschultz@hilgerslaw.com

William Burgess
(*Pro Hac Vice*)
**HILGERS PLLC**
3100 Interstate N. Circle SE
Suite 200 #1047
Atlanta, GA, 30339
Tel: (404)-595-7747
Email: wburgess@hilgerslaw.com

*Counsel for Defendants National Football League, NFL Properties LLC, & NFL Enterprises LLC*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 1

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.     PLAINTIFF'S CLAIMS All SUFFER THRESHOLD FAILURES ................................................................................... 4

          A.     Plaintiff Lacks Article III Standing. ............................... 4

          B.     The *Noerr-Pennington* Doctrine Precludes All Claims. ........... 6

          C.     The First Amendment Protects the NFL's Enforcement Speech. ........................................................................ 8

          D.     All Claims Sound in Fraud and Do Not Satisfy Rule 9(b). ........ 9

          E.     Section 230 Preempts All Claims. ................................ 10

          F.     Counts IV–VII, IX: The California Litigation Privilege Protects Enforcement Communications, and the Claims Should be Stricken under the anti-SLAPP Statute. ............. 11

    II.    COUNTS I–IV: PLAINTIFF'S ANTITRUST CLAIMS FAIL TO STATE CLAIMS. ....................................................... 12

          A.     Counts I and IV: Plaintiff Fails to Plausibly Plead Any Agreement By the NFL. .............................................. 13

          B.     Count II: The NFL Did Not Hold Market Share in Any Relevant Market or Conspire to Monopolize. .................... 15

          C.     Count III: The Clayton Act Cannot Apply Because No Agreement Exists. .................................................. 16

    III.   COUNT VIII: THE LANHAM ACT DOES NOT APPLY. .............. 17

    IV.   COUNTS V–VII AND IX: THE STATE LAW CLAIMS ALL FAIL TO STATE A CLAIM. .............................................. 19

    V.    DISMISSAL SHOULD BE WITH PREJUDICE. .......................... 19

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Prescribers Choice, Inc.*,
   364 F.Supp.3d 1089 (C.D. Cal. 2019)...................................................................18

*Arcell v. Google LLC*,
   No. 5:22-cv-02499-EJD, 2023 WL 5336865 (N.D. Cal. Aug. 18,
   2023).....................................................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................3, 13, 14

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1999)........................................................................................11

*Cascade Trade, LLC v. Cascade Mobility, Inc.*,
   No. 8:23-cv-02121-FWS-DFM, 2024 WL 5411308 (C.D. Cal. Nov.
   12, 2024)...............................................................................................................17

*Chaplinsky v. State of New Hampshire*,
   315 U.S. 568 (1942) ................................................................................................9

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ................................................................................................9

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999)...................................................................................4

*Coastal Cocktails, Inc. v. Frankford Candy, LLC*,
   No. SA CV 21-01548-DOC-KES, 2021 WL 5986910 (C.D. Cal.
   Nov. 12, 2021).........................................................................................................7

*Complex Media, Inc. v. X17, Inc.*,
   No. CV 18-07588 SJO, 2019 WL 2896117 (C.D. Cal. March 4,
   2019)........................................................................................................................9

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
   150 F.4th 1056 (9th Cir. 2025)..............................................................................15

*Cove USA LLC v. No Bad Days Enterprises, Inc.*,
No. 8:20-cv-02314-JLS-KES, 2021 WL 3568251 (C.D. Cal. July 2, 2021) ...................................................................................................*passim*

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023) ....................................................................................... 5

*Fan v. City of Newport Beach*,
No. 8:22-cv-02178-FWS-DFM, 2024 WL 3543471 (C.D. Cal. May 7, 2024) ...................................................................................................... 8

*Feitelson v. Google Inc.*,
80 F.Supp.3d 1019 (N.D. Cal. 2015) ......................................................... 16

*Grupo Gigante SA De CV v. Dallo & Co.*,
391 F.3d 1088 (9th Cir. 2004) .................................................................... 15

*Harbor Performance Enhancement Ctr., LLC v. City of L.A. Harbor Dep't*,
No. CV 20-3251 PSG, 2021 WL 1676281 (C.D. Cal. Mar. 24, 2021) .......................................................................................................... 8

*Hard2Find Accessories, Inc. v. Amazon, Inc.*,
691 F. App'x 406 (9th Cir. 2017) ................................................................. 7

*Honey Bum LLC v. Fashion Nova, Inc.*,
63 F.4th 813 (9th Cir. 2023) ....................................................................... 13

*Hyphy Music, Inc. v. Sena*,
No. 1:21-cv-00216-JLT-HBK, 2025 WL 842893 (E.D. Cal. March 18, 2025) ...................................................................................................... 9

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .................................................................... 14

*Love v. Assoc. Newspapers, Ltd.*,
611 F.3d 601 (9th Cir. 2010) ...................................................................... 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................................... 4

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*,
164 F.4th 710 (9th Cir. 2026) ..................................................................... 10

iii

*McGuire v. Columbia Broad. Sys., Inc.*,
   399 F.2d 902 (9th Cir. 1968)................................................................17

*Moonbug Entertainment, Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*,
   No. 21-cv-06536-EMC, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022)................................................................................................9

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ..............................................................................4, 5

*Musical Instruments & Equipment Antitrust Litig.*, 798 F.3d 1186 (9th Cir. 2015)..............................................................................................13

*Paladin Assocs., Inc. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003)..............................................................16

*Planned Parenthood Fed. of Am., Inc. v. Ctr. For Med. Progress*,
   890 F.3d 828 (9th Cir. 2018)..................................................................3

*R.A.V. v. City of St. Paul, Minn.*,
   505 U.S. 337 (1992) ...............................................................................9

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*,
   637 F.2d 1376 (9th Cir. 1981)..............................................................17

*Silberg v. Anderson*,
   50 Cal. 205 (1990)................................................................................11

*Sosa v. DirecTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)...............................................................6, 7

*Tele Atlas v. Navteq Corp.*,
   397 F.Supp.2d 1184 (N.D. Cal. 2005)..................................................16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008)..................................................................6

*TP Link USA Corp. v. Careful Shopper LLC*,
   No. 8:19-cv-00082-JLS-KES, 2020 WL 3063956 (C.D. Cal. March 23, 2020)..............................................................................................12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...............................................................................4

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F.Supp.3d 1092 (C.D. Cal. 2015).....................................................................7

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016)................................................................................10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)................................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................19

**Statutes**

15 U.S.C. § 14..............................................................................................................16

15 U.S.C. § 1125(a)(1)(B)...........................................................................................18

Cal. Civ. Code § 47(b)............................................................................................7, 11

**INTRODUCTION**

Trademark owners must be able to defend their marks from counterfeiters that flood the marketplace with unauthorized products. Defendants National Football League, NFL Properties LLC, and NFL Enterprises LLC (collectively, the "NFL") own or manage some of the most recognizable and valuable trademarks in sports. Plaintiff sells counterfeits bearing the NFL's marks on TikTok. Since trademark infringement violates TikTok's terms of service, TikTok suspended Plaintiff's account. Rather than stop its lawbreaking, Plaintiff sued, asserting false and frivolous allegations against the NFL.

The NFL's efforts to defend its trademarks are protected activity, barring all of the Second Amended Complaint's baseless claims against the NFL. Many other legal defects warrant dismissal of those claims with prejudice pursuant to Rules 12(b)(1) and 12(b)(6). Moreover, the Court should strike the state law claims brought against the NFL under California's anti-SLAPP Statute, with associated fees awarded to the NFL. The Court should grant the motion and dismiss the Amended Complaint with prejudice.[1]

**BACKGROUND**

NFL Properties manages the licensing and protection of the logos, trademarks, and other identifying intellectual property of the NFL and its 32 member clubs (the "NFL Marks"). 2d Am. Compl. ¶ 59.[2] NFL Properties engages in a wide range of licensing activities, including licensing the NFL Marks to companies for use on products and as promotional and advertising vehicles to enhance the sale and awareness of such companies' own products or services. By virtue of this continuous and extensive use of the NFL Marks on products and in

---

[1] The Second Amended Complaint's frivolity warrants an award of sanctions, for which the NFL intends to separately move under Rule 11.

[2] When considering a Rule 12 motion, the Court accepts the Second Amended Complaint's properly pleaded allegations as true. The NFL does not admit any allegations at this stage.

promotional programs, the NFL Marks have developed immense goodwill and strength as identifiers of NFL goods, services, and sponsorship.  Like any trademark owner, the NFL and member clubs decide whether and to whom to license use of the NFL Marks. Indeed, Plaintiff alleges that the NFL is "the primary licensor" of the NFL Marks. *Id.* ¶ 68.

Despite acknowledging that the NFL—in particular NFL Properties—wields licensing authority for the NFL Marks, Plaintiff falsely asserts that it "complied with all NFL policies related to the operation of its business." *Id.* ¶ 17.  This conclusory and false allegation should not be credited because Plaintiff (1) does not have a license or other authorization from the NFL to use the NFL Marks and (2) does not resell licensed products bearing authorized depictions of the NFL Marks. Indeed, Plaintiff does not allege any facts to demonstrate authorization from NFL Properties because that authorization does not exist. Instead, its allegation that it has complied with all NFL policies is simply an attempted softening of the even more egregious falsehood in the First Amended Complaint in which Plaintiff alleged that it holds a purported license to sell products bearing NFL Marks from the NFL Players Association ("NFLPA"). *See* 2d Am. Compl. Redline ¶¶16–21, ECF No. 91-1 (showing deletion of NFLPA licensing allegations). The NFLPA is not authorized to, and does not, license NFL Marks, nor does Plaintiff actually hold any license from the NFLPA. Further, the first-sale doctrine does not protect Plaintiff's sale of helmets bearing unauthorized depictions of NFL trademarks, including helmets that have been modified after purchase to add NFL Marks or materially alter designs without authorization.

Despite its repeated infringement of NFL Marks, Plaintiff bases all of its claims against the NFL on the NFL's lawful efforts to stop that infringement. *See, e.g.,* 2d. Am. Compl. ¶¶ 5, 41 (alleging "threats, intimidation, and coercion—issued on NFL letterhead"); *id*. ¶¶ 88, 132 (alleging that because of the NFL's policing efforts, TikTok suspended Plaintiff's account for violations of TikTok's terms of

2

service). Indeed, the Second Amended Complaint asserts nine claims against the NFL, all of which stem from the NFL's alleged policing of the NFL Marks and enforcement against infringement: Count I – Violation of Sherman Act § 1; Count II – Violation of Sherman Act § 2; Count III – Violation of Clayton Act § 3; Count IV – Violation of the California Cartwright Act; Count V – Violation of California Unfair Competition Law; Count VI – Tortious Interference with Contractual Relations; Count VII – Tortious Interference with Prospective Economic Advantage; Count VIII – False Advertising and Unfair Competition (Lanham Act); and Count IX – Common Law Unfair Competition. All of these claims are without merit and subject to dismissal under existing precedent. Further, dismissal with prejudice is warranted here, as a third attempt to amend would be futile.

## LEGAL STANDARD

A court should grant a Rule 12(b)(6) motion where the plaintiff fails to plead facts that plausibly state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A properly pleaded complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While a court accepts well-pleaded allegations as true, it should not accept conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When a motion to strike under the California anti-SLAPP Statute, Cal. Civ. Prac. Code § 425.16, challenges only the legal sufficiency of the claim, "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Cove USA LLC v. No Bad Days Enterprises, Inc.*, No. 8:20-cv-02314-JLS-KES, 2021 WL 3568251, at *3 (C.D. Cal. July 2, 2021) (quoting *Planned Parenthood Fed. of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 836 (9th Cir. 2018), *amended* 897 F.3d 1224 (Gould, J. concurring)).

**ARGUMENT**

The Second Amended Complaint suffers from numerous defects, all of which independently warrant dismissal. *First*, Plaintiff lacks Article III standing for all claims, and all claims are immunized under the *Noerr-Pennington* doctrine, are barred by the First Amendment's free speech clause, and suffer from additional threshold defects. *Second*, each count fails to state plausible claims as to the NFL. Dismissal with prejudice is appropriate.

## I.   PLAINTIFF'S CLAIMS ALL SUFFER THRESHOLD FAILURES.

The Second Amended Complaint must be dismissed in its entirety as to the NFL because of several threshold jurisdictional defects or bars to Plaintiff's claims. *First,* Plaintiff lacks Article III standing to pursue claims against the NFL because Plaintiff's suspension by TikTok is not plausibly traceable to the NFL. *Second*, the *Noerr-Pennington* doctrine immunizes the NFL's trademark enforcement efforts and thus bars all claims. *Third*, the First Amendment protects the NFL's speech about its trademarks, for which all claims seek liability. *Fourth*, Plaintiff has failed to satisfy Rule 9(b), which applies to all of its claims. *Fifth*, as explained in TikTok's motion to dismiss (ECF No. 106), Section 230 of the Communications Decency Act precludes all claims. And *sixth*, California's litigation privilege requires dismissal of the state law claims.

### A.   Plaintiff Lacks Article III Standing.

Plaintiff lacks standing to pursue claims against the NFL because it has not plausibly alleged any injury caused by the NFL. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff must separately establish standing for each claim as to each Defendant. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("Our decisions make clear that 'standing is not dispensed in gross.' . . . That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" (quoting *TransUnion LLC v. Ramirez*, 594

U.S. 413, 431 (2021)). At most, Plaintiff pleads that TikTok suspended Plaintiff pursuant to TikTok's terms and conditions. This alleged injury is not "fairly traceable to the challenged action" of the NFL, "meaning that there must be a causal connection between the injury and the conduct complained of." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (internal quotations omitted).

The Supreme Court's recent opinion in *Murthy v. Missouri* is instructive. The *Murthy* Court held that a plaintiff cannot establish standing when a social media platform (such as TikTok) has "independent incentives to moderate content" and "exercise[s] [its] own judgment" to remove content. 603 U.S. at 57–60. Here, the Second Amended Complaint solely alleges injury caused by actions *taken by TikTok* pursuant to *TikTok's* own policies. *See* 2d. Am. Compl. ¶¶ 8, 246(a)–(b) (alleging that TikTok "suppress[ed] or bann[ed] Plaintiff" due to "trademark and copyright violations" and "[g]amblification violations"). Therefore, Plaintiff lacks standing to pursue such claims against the NFL because TikTok's intervening discretion forecloses traceability to the NFL. *Murthy*, 603 U.S. at 57.

Although Plaintiff makes conclusory assertions that TikTok "conspir[ed] with Fanatics and the NFL to exclude Plaintiff," 2d Am. Compl. ¶ 247(b), the Second Amended Complaint includes no facts to plausibly support the existence of an agreement. *See* Section II(A), *infra*. At most, Plaintiff alleges that "representatives of Fanatics and the NFL communicated directly with TikTok personnel" in 2022 "[s]hortly" before TikTok removed Plaintiff's content. 2d Am. Compl. ¶¶ 88, 132. Those allegations do not plausibly support a conspiracy; they instead are consistent with TikTok "exercis[ing] [its] own judgment" as an "independent actor" to enforce its terms of service. *Murthy*, 603 U.S. at 60.

Plaintiff lacks Article III standing for its claims against the NFL, and the Court should dismiss all claims as to the NFL for lack of subject matter jurisdiction.

**B.    The *Noerr-Pennington* Doctrine Precludes All Claims.**

Plaintiff's claims all seek liability from the same alleged facts: the NFL engaged in trademark enforcement efforts to protect its intellectual property rights from Plaintiff's repeated infringement through communications with TikTok and others. Binding law considers these efforts as related to litigation, including potential Lanham Act claims for infringement. The *Noerr-Pennington* doctrine prohibits liability for such pre-litigation activity and requires dismissal with prejudice.

The *Noerr-Pennington* doctrine effectuates the First Amendment's protection of the right to "petition the Government for a redress of grievances." U.S. Const. amend. I; *see also Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). It generally immunizes all conduct necessary to petition the Government, including litigation and pre-litigation demand letters, and communications with third-party platforms that host the infringing materials. *See Sosa*, 437 F.3d at 929–30. The doctrine applies to both federal and state law claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

In *Sosa*, the Ninth Circuit applied the *Noerr-Pennington* doctrine to immunize DirecTV for thousands of pre-suit copyright infringement demand letters. *Sosa*, 437 F.3d at 941. As the court explained, imposing liability for pre-suit letters would burden protected First Amendment petitioning activity. *Id.* at 942. Pre-suit communications thus are only unprotected "where they include representations so baseless that the threatened litigation would fall into the 'sham litigation' exception." *Theme Promotions*, 546 F.3d at 1007 (quoting *Sosa*, 437 F.3d at 936–38). This requires showing both that the suit would be "objectively baseless and the defendant's motive in bringing it [would be] unlawful." *Sosa*, 437 F.3d at 938.

Importantly, the *Noerr-Pennington* doctrine applies to pre-suit infringement communications to third parties that host infringing materials—the alleged conduct

6

at issue here. *See Hard2Find Accessories, Inc. v. Amazon, Inc.*, 691 F. App'x 406, 407 (9th Cir. 2017) (applying *Noerr-Pennington* doctrine to infringement notices sent to Amazon); *Coastal Cocktails, Inc. v. Frankford Candy, LLC*, No. SA CV 21-01548-DOC-KES, 2021 WL 5986910, at *5 (C.D. Cal. Nov. 12, 2021) (same).

Plaintiff's claims here plainly seek to hold the NFL liable for infringement notices and similar communications. Plaintiff cites alleged "threats," including an alleged "letter from the NFL's Office of General Counsel on NFL letterhead that Plaintiff received . . . demanding that they cease and desist the sale of any merchandise based on allegedly exclusive intellectual-property rights." 2d Am. Compl. ¶ 5. The Second Amended Complaint further alleges that the NFL communicated with TikTok, on whose platform Plaintiff sells infringing products, to protect the NFL Marks. *Id.* ¶¶ 79–80, 85, 88–89, 100–105. Allegedly because of those communications (and Plaintiff's infringing activity), TikTok suspended and demoted Plaintiff and similar infringers. *E.g., id.* ¶¶ 105, 131(b).

Under binding Ninth Circuit law from *Sosa* and its progeny, the *Noerr-Pennington* doctrine immunizes such activities taken to protect the NFL's intellectual property. This Court's opinion in *Cove USA LLC v. No Bad Days Enters., Inc.* is instructive. No. 8:20-cv-02314-JLS-KES, 2021 WL 3568251 (C.D. Cal. July 2, 2021). In that case, the plaintiff sold clothes that infringed on the defendant's trademarks on e-commerce platform Shopify. *Id.* at *1. The defendant sent infringement notices to Shopify, and Shopify removed the alleged infringing products. *Id.* The plaintiff then sued, asserting several claims that Plaintiff also alleges here, including unfair competition, intentional interference with prospective economic relations, and intentional interference with a contractual relationship.

This Court held that California's statutory litigation privilege, Cal. Civ. Code § 47(b), barred plaintiff's claims. *Id.* at *6. The Court's reasoning in applying the litigation privilege also applies to the *Noerr-Pennington* doctrine. *See also, e.g., UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092,

1114–15 (C.D. Cal. 2015) (Morrow, J.) (applying same analysis for *Noerr-Pennington* doctrine as California litigation privilege). As the Court explained, communications to a platform identifying infringing products are "sufficiently related to this litigation" to warrant the litigation privilege. *Cove USA,* 2021 WL 3568251, at *6. This Court's reasoning from *Cove USA* applies with equal force here, where the NFL allegedly gave TikTok notice of Plaintiff's infringement of the NFL Marks. 2d Am. Compl. ¶¶ 79–80, 85, 88–89, 100–105.

The *Noerr-Pennington* doctrine is an immunity that cannot be pleaded around. *See, e.g., Fan v. City of Newport Beach,* No. 8:22-cv-02178-FWS-DFM, 2024 WL 3543471, at *7 (C.D. Cal. May 7, 2024) (dismissing claims with prejudice under the *Noerr-Pennington* doctrine because amendment would be futile); *Harbor Performance Enhancement Ctr., LLC v. City of L.A. Harbor Dep't,* No. CV 20-3251 PSG (MMAx), 2021 WL 1676281, at *13–14 (C.D. Cal. Mar. 24, 2021) (same); *see also Cove USA*, 2021 WL 3568251, at *6 (dismissing with prejudice because a party cannot replead around the litigation privilege without pleading entirely new claims.). Accordingly, the Court should dismiss all claims with prejudice.

## C.    The First Amendment Protects the NFL's Enforcement Speech.

In addition to the *Noerr-Pennington* doctrine, the First Amendment's speech protections also provide a separate and independent basis to dismiss all of Plaintiff's claims. As discussed above, Plaintiff's claims against the NFL are based entirely on its allegations that the NFL, as part of its trademark enforcement efforts, made statements about Plaintiff's infringement to TikTok and unspecified others. *See, e.g.*, 2d Am. Compl. ¶¶ 79–80, 85, 88–89, 100–105.[3] The First Amendment squarely protects such speech and thus bars all claims.

---

[3] As explained further in Section II(A), *infra*, Plaintiff never pleads that the NFL entered into any agreement.

The First Amendment broadly shields speech from civil or criminal liability. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 327 (2010). Liability may only be imposed for a few narrow categories of speech with "such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 337, 382–83 (1992) (quoting *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 572 (1942)).

The NFL's alleged statements about infringement of its intellectual property are protected speech not subject to any exception. Indeed, this Court and others have squarely held that statements made to enforce intellectual property rights are protected speech under California's anti-SLAPP Statute, and thus under the First Amendment. *Cove USA*, 2021 WL 3568251, at *4; *see also, e.g., Complex Media, Inc. v. X17, Inc.*, No. CV 18-07588 SJO, 2019 WL 2896117, at *3 (C.D. Cal. March 4, 2019); *Hyphy Music, Inc. v. Sena*, No. 1:21-cv-00216-JLT-HBK, 2025 WL 842893, at *5 (E.D. Cal. March 18, 2025); *Moonbug Entertainment, Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd.*, No. 21-cv-06536-EMC, 2022 WL 580788, at *12 (N.D. Cal. Feb. 25, 2022).

Plaintiff asserts no basis for liability other than the NFL's alleged speech about Plaintiff's infringement. Accordingly, the First Amendment requires dismissal of all claims.

### D.    All Claims Sound in Fraud and Do Not Satisfy Rule 9(b).

Rule 9(b) applies to all of Plaintiff's claims as to the NFL and demands heightened pleading. Because Plaintiff has failed to plead any specific statement by the NFL with the required particularity, all claims should be dismissed.

Each claim rests on allegations that "Defendants knowingly made false and misleading claims of exclusivity to the public and to online platforms." 2d Am. Compl. ¶ 4; *see also id.* ¶¶ 131 & 133 (Count I); 148, 149, 157, & 162 (Count II); 165 & 171 (Count III); 182 (Count IV); 193 & 194 (Count V); 202 (Count VI); 212

9

(Count VII); 220–30 (Count VIII); 234 & 237 (Count IX). Claims based on false or misleading representations—no matter how they are styled—sound in fraud and must satisfy Rule 9(b)'s heightened pleading requirements. *See, e.g., Malheur Forest Fairness Coalition v. Iron Triangle, LLC*, 164 F.4th 710, 731 (9th Cir. 2026) (applying Rule 9(b) to Sherman Act Section 2 claim asserting that defendant acquired and maintained monopoly through false representations to third party). Specifically, Plaintiff must allege the "who, what, when, where, and how" of alleged statements by the NFL. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiff has not satisfied Rule 9(b) with respect to the NFL. Plaintiff never identifies any specific statement by the NFL and instead vaguely group-pleads Defendants' alleged "false and misleading claims of exclusivity" and "misrepresentations to platforms and the public." 2d. Am. Compl. ¶¶ 4, 43. Plaintiff never explains what exactly the NFL itself said, much less when, where, how, and to whom the NFL made a statement. Such threshold failures do not meet Rule 9(b)'s heightened requirements and warrant dismissal. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

### E.    Section 230 Preempts All Claims.

This case also cannot proceed against the NFL for the same reason it cannot proceed against TikTok: Section 230 of the Communications Decency Act preempts Plaintiff's claims and precludes liability.

Each of Plaintiff's claims against the NFL conclusorily alleges that the NFL participated in a conspiracy to have TikTok suspend Plaintiff from the TikTok platform. *See, e.g.,* 2d Am. Compl. ¶¶ 130, 157, 159, 167, 182, 193–95, 204, 213–

10

14, 222, 226, 234. Of course, conspiracy liability cannot be imposed if there is no underlying tort. *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010).

As TikTok comprehensively explains, Section 230 of the Communications Decency Act preempts any claims seeking to hold a platform like TikTok liable for content and user moderation decisions. TikTok Mot. to Dismiss at 5–11 (ECF No. 106). TikTok's suspension of Plaintiff thus is not tortious conduct and cannot give rise to conspiracy liability against the NFL. Moreover, as discussed in Sections I(A)–(C), *supra* and II(A), *infra*, other than conclusory allegations of a conspiracy, all the NFL is alleged to have done is communicate with TikTok and others to enforce its trademark rights, which also is not tortious.

**F.    Counts IV–VII, IX: The California Litigation Privilege Protects Enforcement Communications, and the Claims Should be Stricken under the anti-SLAPP Statute.**

California's litigation privilege, Cal. Civ. Code § 47(b), explicitly protects the NFL's trademark enforcement speech under an absolute privilege and bars the state law claims. Under § 47(b), the litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Cove USA,* 2021 WL 3568251, at *5 (quoting *Silberg v. Anderson*, 50 Cal. 205, 212 (1990)). The litigation privilege applies to "communications preparatory to or in anticipation of the bringing of an action or other official proceeding." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999).

In *Cove USA,* this Court explained that the litigation privilege applies to communications to third-party platforms identifying products being sold on those platforms as "infringing Defendants' trademark"—the same communications the NFL is alleged to have made here. 2021 WL 3568251, at *5–6 (collecting cases

11

holding same). Importantly, California's litigation privilege is "absolute" and thus "is not subject to qualification based upon the subjective motives or alleged bad faith of a party making a challenged communication." *Id.* at *6; *see also TP Link USA Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 WL 3063956, at *9 (C.D. Cal. March 23, 2020). The California litigation privilege thus bars all of Plaintiff's state law claims as to the NFL and requires dismissal. As explained above, dismissal should be with prejudice because the litigation privilege cannot be pleaded around.

Relatedly, the Court should strike the state law claims under the anti-SLAPP statute and award the NFL its costs and fees. The California anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16, immunizes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Section 425.16(e)(2) requires striking claims arising out of pre-suit demand letters because the anti-SLAPP Statute explicitly covers the claims, and the claims will fail on the merits because of the litigation privilege. *Cove USA,* 2021 WL 3568251, at *4–5. This Court should strike all state law claims and award the NFL its costs and fees associated with this portion of the motion. *Id.* at *6. The NFL will file a separate accounting of costs and fees if the Court strikes the claims.

## II.    COUNTS I–IV: PLAINTIFF'S ANTITRUST CLAIMS FAIL TO STATE CLAIMS.

As TikTok's and Fanatics' motions to dismiss outline, Plaintiff has entirely failed to plead a harm to *competition* rather than to Plaintiff itself. TikTok Mot. to Dismiss at 12–13; Fanatics Mot. to Dismiss at 11–13. Plaintiff also has not pleaded a relevant market, which is required for all of its antitrust claims. TikTok Mot. to Dismiss  at 14–18; Fanatics Mot. to Dismiss at 9–11. For judicial economy, the NFL adopts in full TikTok's and Fanatics' arguments as to antitrust injury and market definition, which are dispositive as to all Defendants.

The antitrust claims further fail for reasons specific to the NFL.

### A. Counts I and IV: Plaintiff Fails to Plausibly Plead Any Agreement By the NFL.

Plaintiff's restraint of trade claims under Sherman Act Section 1 (Count I) and the Cartwright Act (Count IV) come nowhere close to plausibly pleading that the NFL entered into an agreement to restrain trade as required for both claims. *See Twombly*, 550 U.S. at 570.

An agreement may be pleaded with either direct evidence or circumstantial evidence. Direct evidence is the "smoking-gun" evidence of an agreement that does not require any inferences. *Honey Bum LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 823 (9th Cir. 2023). Circumstantial evidence requires parallel conduct coupled with "plus factors," which are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re: Musical Instruments & Equipment Antitrust Litig.*, 798 F.3d 1186, 1193–94 (9th Cir. 2015). Sufficiently pleaded plus factors are mandatory because Plaintiff must allege more than "merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Indeed, a claim should be dismissed where "an obvious alternative explanation" for the alleged conspiracy to restrain trade exists. *Id.* at 567.

Plaintiff never plausibly pleads any agreement by the NFL under either standard. At most, Plaintiff pleads that the NFL (1) licensed certain marks to Fanatics, *e.g.,* 2d Am. Compl. ¶ 59; (2) holds an equity stake in Fanatics, *e.g.,* 2d Am. Compl. ¶¶ 7, 58, 65, 68; and (3) communicated with TikTok and other unspecified people about Plaintiff's infringement of the NFL Marks, *e.g.,* 2d Am. Compl. ¶¶ 41, 132. In fact, Plaintiff never alleges that the NFL agreed to do anything. Nor does Plaintiff allege any parallel conduct of the NFL and co-Defendants, coupled with facts indicating an agreement. Plaintiff's conclusory labels to the contrary, characterizing such lawful conduct as a "scheme,"

13

"conspiracy," "agreement," or actions "in concert," *e.g.* 2d Am. Compl. ¶¶ 1, 2, 9, 35, 37, 43, 60, 66, 72, 73, 90, 94, 95, 97, 104, 113, 115, 119, 121, 130, 131, 182, 184, 194, 203, 236, cannot be credited. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–1048 (9th Cir. 2008) (allegation that appellants "knowingly, intentionally and actively participated [] in the alleged scheme" was "nothing more than a conclusory statement").

Even if such an agreement among the NFL, Fanatics and TikTok were alleged, it is wholly implausible. Plaintiff alleges that TikTok conspired with the NFL and Fanatics to help Fanatics become a monopoly seller on TikTok's platform in order to "enhance [TikTok's] valuation in anticipation of a sale to U.S. owners." 2d Am. Compl. ¶ 140. Yet Plaintiff's own allegations undermine that theory. Plaintiff alleges, that it paid TikTok a commission on every sale, along with additional monthly payments. *Id.* ¶ 40. Plaintiff also acknowledges that TikTok benefits from having more sellers, not fewer, participating on its platform. *Id.* ¶ 26. Given those allegations, Plaintiff's theory that TikTok would conspire to help Fanatics obtain a monopoly and reduce the number of sellers participating on its platform is implausible. *See* TikTok Mot. to Dismiss at 2, 15–16.

The Second Amended Complaint instead provides a far more plausible and "obvious alternative explanation" to Plaintiff's implausible conspiracy theory. *Twombly*, 550 U.S. at 567. The NFL allegedly reported to TikTok that Plaintiff's TikTok account was being used to promote and sell counterfeit and unlicensed goods that infringed on the NFL Marks. *E.g.* 2d Am. Compl. ¶¶ 41, 88, 132. Upon receiving the reports about IP infringement, according to Plaintiff's own allegations, TikTok exercised its independent business judgment and publisher discretion to suspend Plaintiff's account for violating TikTok's terms of service. *Id.* ¶ 132 (alleging that bans were implemented shortly after TikTok received reports from the NFL and Fanatics of intellectual property infringement); *see Kendall*, 518 F.3d at 1049.

14

The alternative explanation comports with the NFL's duty to police infringement of the NFL Marks. *See Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) ("Companies expecting judicial enforcement of their marks must conduct an *effective* policing effort."). To hold that such policing, when followed by a platform's enforcement against the infringer, evidences an agreement under Section 1 would undermine mandated IP enforcement regimes and subject responsible rightsholders and platforms to antitrust liability. There is no authority—anywhere—to support Plaintiff's attempt to convert routine (and mandatory) trademark enforcement action into an antitrust violation.

Because Plaintiff fails to plead the existence of an agreement by the NFL, it has failed to plead a restraint of trade claim under Sherman Act Section 1 or the Cartwright Act.

**B.      Count II: The NFL Did Not Hold Market Share in Any Relevant Market or Conspire to Monopolize.**

Plaintiff's Section 2 claim relates to Fanatics' alleged involvement in a "relevant market for live-stream, social-media-based retail sale of licensed NFL sports memorabilia in the United States." 2d Am. Compl. ¶ 149. It thus asserts that Fanatics—not any of the NFL entities—allegedly exercises monopoly power. *Id.* ¶¶ 149, 150, 157. Even if Plaintiff had adequately alleged a cognizable relevant market—which it does not for the reasons explained by both TikTok, *see* TikTok Mot. to Dismiss at 14–18, and Fanatics, *see* Fanatics Mot. To Dismiss at 9–11— Plaintiff does not and cannot allege that the NFL exercises or has attempted to exercise monopoly power in such market. The NFL thus cannot be held liable for actual or attempted monopolization. *Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1066 (9th Cir. 2025) (explaining that monopolization and attempted monopolization require pleading that defendant has monopoly power or sought to achieve monopoly power, respectively).

Accordingly, the sole question for this Court as it relates to the claims against the NFL is whether Plaintiff has sufficiently pleaded a conspiracy to monopolize claim, which requires alleging the "existence of a combination or conspiracy to monopolize." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). But as set forth above, the Second Amended Complaint fails to plausibly plead any concerted action under Section 1 foreclosing any claim of a conspiracy to monopolize. *See, e.g., Arcell v. Google LLC,* No. 5:22-cv-02499-EJD, 2023 WL 5336865, at *4 (N.D. Cal. Aug. 18, 2023) (dismissing conspiracy to monopolize claim because Plaintiff failed to plead existence of an agreement under Section 1); *see also* Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application, § 809 (explaining that conspiracy to monopolize claims are "redundant" of Section 1 claims). The NFL addresses the Second Amended Complaint's failure to plead concerted action in Section II(A). For the same reasons as discussed above, Plaintiff has not pleaded *any* agreement by *the NFL* related to box breaking, much less an agreement to monopolize, requiring Count II's dismissal.

### C. Count III: The Clayton Act Cannot Apply Because No Agreement Exists.

Count III reflects a fundamental misunderstanding of Clayton Act Section 3, which prohibits certain exclusive arrangements in leases, sales, and contracts "of goods, wares, merchandise, machinery, supplies, or other commodities." 15 U.S.C. § 14. Section 3 does not apply to licensing agreements. *Id.*; *see also, e.g., Feitelson v. Google Inc.*, 80 F.Supp.3d 1019, 1034 (N.D. Cal. 2015) (dismissing Section 3 claim because licenses are not "sales or contracts for sale of tangible goods."); *Tele Atlas v. Navteq Corp.*, 397 F.Supp.2d 1184, 1192 (N.D. Cal. 2005) (same). Because Plaintiff does not challenge a commodity contract subject to Section 3, Count III should be dismissed.

Additional pleading defects take the alleged agreement further outside of the Clayton Act's ambit. Plaintiff appears to improperly challenge alleged licensing agreements between Breakers and Fanatics: "exclusive contracts imposed on Breakers, including Plaintiff, [that] prohibited them from selling sports memorabilia from any source other than Fanatics." 2d Am. Compl. ¶¶ 168, 170. But Plaintiff does not allege that it entered into any such agreement.  To the contrary, elsewhere in the Second Amended Complaint Plaintiff states that it was "pressured to sign (but did not sign) a purported exclusive contract with Fanatics[.]" *Id.* ¶ 107. In fact, Plaintiff does not identify *any* party that executed such an agreement with Fanatics. Accordingly, Plaintiff does not plead the existence of *any* contract, much less a contract subject to the Clayton Act, also requiring dismissal of Count III. *See Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1389 (9th Cir. 1981) ("Section 3 of the Clayton Act has no application in the absence of an executed agreement").

Lastly, and at all events, Plaintiff concedes that the NFL was not involved in any alleged agreement and instead merely "provided licensing leverage to support Fanatics' exclusivity demands." 2d Am. Compl. ¶ 172. It is unclear what Plaintiff means by this allegation, but in any case, even if Plaintiff had alleged an agreement (which it did not), the NFL cannot be held liable under Section 3 for an alleged agreement to which it was not a party (even if such an agreement between Plaintiff and Fanatics were executed). *See Ron Tonkin Gran Turismo*, 637 F.2d at 1389; *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968) ("[t]he language of the statute defines liability in terms of a person who makes a sale or contracts for sale").

### III.    COUNT VIII: THE LANHAM ACT DOES NOT APPLY.

As the NFL explained in Section I(D) above, Plaintiff has not identified any statement by the NFL with sufficient particularity under Rule 9(d), which courts routinely apply to Lanham Act claims. *See Cascade Trade, LLC v. Cascade*

17

*Mobility, Inc.*, No. 8:23-cv-02121-FWS-DFM, 2024 WL 5411308, at *7 (C.D. Cal. Nov. 12, 2024) (collecting cases). That pleading failure alone warrants dismissal. But even setting Rule 9(d) aside, the few vague and unspecified statements Plaintiff attributes to the NFL do not fall within the Lanham Act's prohibition on false advertising, which applies only to "commercial advertising or promotion." *See* 15 U.S.C. § 1125(a)(1)(B). To qualify as "commercial advertising or promotion" a plaintiff must allege (1) commercial speech (2) made by a defendant that competes with the plaintiff (3) intended to influence consumers to buy the defendant's goods or services and (4) sufficiently disseminated to the relevant purchasing public. *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F.Supp.3d 1089, 1110 (C.D. Cal. 2019) (Carter, J.) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

Plaintiff's shotgun allegations fail in multiple respects. Plaintiff merely asserts in conclusory fashion that all Defendants made unspecified statements that Plaintiff sold products that infringed upon the NFL Marks. *See* 2d Am. Compl. ¶¶ 220–22. But Plaintiff does not (and cannot) allege that it competes with the NFL in the alleged relevant market. To the contrary, Plaintiff alleges that the NFL "is the primary licensor of league marks" *id.* ¶ 68, while Plaintiff sells products bearing those marks. As such, the NFL does not compete with Plaintiff in the marketplace. For this same reason, Plaintiff cannot plausibly allege that any statement by the NFL about Plaintiff's infringement was intended to influence consumers to buy NFL products or services, rather than to protect and enforce the NFL's intellectual property rights. Finally, the Second Amended Complaint contains no allegations regarding whether, when, where, to whom, or how any alleged statement by the NFL about Plaintiff was disseminated to the public. Each of these pleading failures independently require Count VIII's dismissal.

## IV.   COUNTS V–VII AND IX: THE STATE LAW CLAIMS ALL FAIL TO STATE A CLAIM.

While the many threshold deficiencies should dispose of all of Plaintiff's claims, the Second Amended Complaint also fails to sufficiently state a claim for Counts V – VII and IX.[4] TikTok and Fanatics thoroughly explain the pleading defects for those claims, which apply equally to the NFL. *See* TikTok Mot. to Dismiss at 20–22; Fanatics Mot. to Dismiss at 17–21. The NFL fully adopts and incorporates the arguments in Section III of TikTok's motion to dismiss and Sections IV(E), (F), (H), and (I) of Fanatics' motion to dismiss as to the state law claims. Dismissal is appropriate under Rule 12(b)(6) as to the NFL for those same reasons.

## V.   DISMISSAL SHOULD BE WITH PREJUDICE.

Plaintiff has now had several opportunities to state a claim against the NFL. Its failure to do so demonstrates the futility of amendment. As established above, threshold defects, protections, and privileges bar all claims. Plaintiff cannot cure those defects without pleading "entirely new claims premised on entirely different allegations." *Cove USA*, 2021 WL 3568251, at *6 (cleaned up). As this Court recognized in *Cove USA*, dismissal with prejudice of such claims is appropriate. *See id.* (denying leave to amend claims barred by the litigation privilege). Moreover, Plaintiff's failure to come close to stating a claim after two amendments indicates that it has "no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

After multiple amendments, Plaintiff still cannot state a viable claim. Because the defects are fundamental and cannot be cured through further amendment, dismissal with prejudice is warranted.

---

[4] The Cartwright Act claim (Count IV) fails for the reasons discussed in Section II, *supra*.

19

**CONCLUSION**

Plaintiff's claims rest on the fundamentally flawed premise that it is entitled to profit from the unauthorized use of NFL intellectual property and then seek damages when those intellectual property rights are enforced. The Court should dismiss the Second Amended Complaint with prejudice and strike the California state law claims pursuant to the anti-SLAPP Statute. The NFL respectfully requests the Court award fees associated with its anti-SLAPP motion to strike.

Dated: July 30, 2026

Respectfully Submitted,

By: */s/ Alec Schultz*
Luke Landers, Bar No. 315475
**HILGERS PLLC**
27001 Agoura Road, Suite 350
Calabasas, CA 91301
Tel: (310) 692-8385
Email: llanders@hilgerslaw.com

Alec Schultz
(*Pro Hac Vice*)
**HILGERS PLLC**
1221 Brickell Avenue
Suite 900
Miami, FL 33131
Tel: (305)-630-8304
Email: aschultz@hilgerslaw.com

William Burgess
(*Pro Hac Vice*)
**HILGERS PLLC**
3100 Interstate N. Circle SE
Suite 200 #1047
Atlanta, GA, 30339
Tel: (404)-595-7747
Email: wburgess@hilgerslaw.com

*Counsel for Defendants National Football League, NFL Properties LLC, & NFL Enterprises LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants National Football League, NFL Properties LLC, & NFL Enterprises LLC certifies that this brief contains 6,060 words, which complies with the word limit of Local Rule 11-6.1.

/s/ *Alec* Schultz
Alec Schultz

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Alec* Schultz
Alec Schultz